UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

        <u>MEMORANDUM & ORDER</u>

     v.              03-CR-929 (NGG)

VINCENT BASCIANO, and
PATRICK DEFILIPPO,

        Defendants.
------------------------------------------------------X

GARAUFIS, United States District Judge.

      Defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo") have

each moved under Fed. R. Crim. Proc. 14 for severance in their trial scheduled to begin January

17, 2006;[1] Basciano further moves for severance under the Due Process Clause. (See Spirito &

DeFilippo Mem. Support Mot. Sever Basciano ("DeFilippo Mem., May 2005"); DeFilippo &

Spirito Mem. Support Pretrial Mot. 16-23 ("DeFilippo Mem., Sept. 2005"); Basciano Mem.

Support Pretrial Mot. 10-21 ("Basciano Mem.").)  In their respective pre-trial motions, submitted

September 16, 2005, Defendants argue that a joint trial would be unduly prejudicial because they

have mutually antagonistic defenses and because DeFilippo seeks to admit evidence that is likely

inadmissible by the Government against Basciano. (Basciano Mem. at 10-16, DeFilippo Mem.,

May 2005, at 16-23.)  In additional briefings requested by the court, Basciano asserts that the

---

[1]Basciano actually moved under "Fed.R.Evid. 14."  As there is no Federal Rule of
Evidence 14 and Federal Rule of Criminal Procedure 14 involves a motion for severance, the
court reads Basciano's motion to be made under Rule 14 of the Federal Rules of Criminal
Procedure.

1

admittance of the "Massino tapes"[2] by DeFilippo would violate Basciano's Sixth Amendment right to counsel (Basciano Letter Br., Nov. 29, 2005), and DeFilippo identifies specific portions of the Massino tapes that he considers vital to his defense and argues that the tapes are admissible under the Federal Rules of Evidence (DeFilippo Letter Br., December 2, 2005).

The Government opposes the Defendants' motions for severance. In its response, the Government argues that the Defendants fail to meet the standard of mutually antagonistic defenses or severability due to prejudice, and that hostility between co-defendants does not merit severance. (Gov't Resp. at 26-62.) Furthermore, the Government argues that judicial economy and a strong federal court preference for joint trials compel a joint trial in this case. (Id. at 63.) In further briefing requested by the court, the Government concedes that if the Massino tapes were introduced by DeFilippo in a joint trial, Basciano could suffer a potential violation of his Sixth Amendment right to counsel,[3] but argues that, under the Federal Rules of Evidence, DeFilippo is barred from introducing the tapes. (Gov't Letter Br., Nov. 29, 2005) The Government moves, in limine, for the exclusion of the Massino tapes. (Id.)

The court heard extensive oral argument on these and other pre-trial motions on December 2, 2005. At that time, I reserved decision on all motions. I now rule on the question of severance and the admissibility of the Massino tapes. I will rule later on the remaining

---

[2] Draft Transcript of Jan. 3, 2005 F.B.I. Recording; Draft Transcript of Jan. 7, 2005 F.B.I. Recording ("Massino tapes"). These tapes were consensual recordings made by Joseph Massino of two January 2005 conversations he had with Basciano in the Metropolitan Detention Center, where they both were held awaiting trial in this case.

[3] The Government limits this concession with the proviso that it is made "in an excess of caution – and for the purposes of United States v. Basciano, 03 Cr. 929 (NGG) ('Basciano I') and not United States v. Basciano, 05 Cr. 60 (NGG) ('Basciano II')." (Govt. Ltr. of Nov. 29, 2005)

motions.  For the reasons set forth below, Defendants' motions for severance are DENIED on all

grounds; the Government's motion for the exclusion of the Massino tapes is GRANTED in part

and DENIED in part.


## BACKGROUND

In the most recent superseding indictment, the grand jury charges Basciano and/or

DeFilippo with participating in a total of fifteen racketeering acts and eleven substantive counts

of illegal activity in the furtherance of the Bonanno crime family's operations, including illegal

gambling, loansharking, arson, attempted murder, and murder.  (See generally Basciano I (S-4).)[4]

Seven other co-defendants have pled guilty before this court and consequently do not face trial in

January.  DeFilippo first moved to sever his trial from that of Basciano's in May 2005.

(DeFilippo Mem., May 2005.)  After DeFilippo and the Government completed their briefing on

that motion, I adjourned all pre-trial motions until September 2005.  (Scheduling Order, June 6,

2005.)

Among the other counts, and relevant to the issue of severance, DeFilippo is accused of

having participated in the murder of Gerlando Sciascia a/k/a George from Canada ("Sciascia") in

the furtherance of the Bonanno crime family enterprise.  (Basciano I (S-4 ¶¶ 34-36, 49-54).)

Joseph Massino, who pled guilty to ordering the murder of Sciascia in or around March 1999,

allocuted that DeFilippo participated in the killing.  (Massino Sentencing Tr.18, June 23, 2005.)

John Spirito, also charged in this case, has pled guilty to having cooperated with other

---

[4]The instant case (Docket No. 03 Cr. 929) is referred to as Basciano I.  The later
indictment of Basciano (Docket No. 05 Cr. 60) is referred to as Basciano II.

individuals in the murder of Sciascia, specifically to driving Sciascia to the place where he was killed, and then to hauling off his body to dispose of it. (Spirito Allocution Tr. 30-39, Sept. 27, 2005.) Basciano is neither charged with, nor alleged by the Government to have participated in, the killing of Sciascia. DeFilippo is also charged in the attempted murder of David Nunez, as well as with illegal gambling and loan sharking. (Basciano I (S-4).) And, although not charged in this case, the Government submitted evidence to the court supporting the proposition that Basciano and DeFilippo have each sought or conspired to murder the other. (See Gov't Opp. Def's' Pretrial Mot., at 32, n.15.)

Basciano is charged with racketeering acts that include the attempted murder of David Nunez, the attempted murder of Nardino "Lenny" Collotti, the murder of Frank Santoro, and solicitation to murder of Joe Martino. (Basciano I (S-4).) He is additionally charged with racketeering acts of arson and loan sharking and a substantive count of illegal gambling. (Id.)

While in prison awaiting trial in this case and after being found guilty in a prior case before this court (Docket No. 02-cr-307), Joseph Massino, the then-head of the Bonanno crime family, agreed to become a government informant and taped two conversations in prison that he had with Basciano.[5] (See Massino tapes.) Basciano was already indicted in this case at the time Massino recorded their conversations. Mindful of these facts, the Government has advised the court that it has no plans to introduce the Massino tapes in the upcoming trial, because introduction of such evidence could violate Basciano's Sixth Amendment right to counsel. See Massiah v. United States, 377 U.S. 201 (1964); Maine v. Moulton, 474 U.S. 159 (1985). After

---

[5] The information obtained by the Government through these conversations form, in part, the basis of a separate indictment against Basciano. Basciano II (S-3).

DeFilippo filed a motion to sever his trial from Basciano's in May 2005, arguing that the Massino tapes were relevant to the question of severance, I ordered the release of copies of the Massino tapes to both defendants.  (DeFilippo Mem., May 2005.)  This allowed them time to determine and/or explain to the court what, if any, specific statements on the tapes would support their motions for severance.

## ANALYSIS

_____Rule 8(b) of the Federal Rules of Criminal Procedure allows the Government to charge defendants together when "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Rule 14 of the Federal Rules of Criminal Procedure, in contrast, permits a district court to grant severance of defendants when, "it appears that a defendant or the government is prejudiced by a joinder."  Rule 14 is limited by the strong preference in the federal system for defendants who have been indicted together to be tried jointly.  Zafiro v. United States, 506 U.S. 534, 537 (1993) ("Rules 8(b) and 14 are designed to promote economy and efficiency.")   "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  Id. at 540 (internal citations and quotations omitted).

Where a defendant or the government is prejudiced in a joint trial, the decision whether to sever is "committed to the sound discretion of the trial judge."  United States v. Diaz, 176 F.3d 52, 102 (2d. Cir. 1991) (internal quotations omitted).  Severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt."  Zafiro, 506 U.S. at 539.  "Acknowledged in this policy [favoring joint trials] is the inevitable tolerance of some slight

prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." United States v. Cardascia, 951 F.2d 474, 482-83 (2d Cir. 1991) (further noting that "the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multidefendant trials." Id. at 483.) This court has a preference for joint trials of defendants alleged to have participated in the same RICO conspiracy. United States v. Urso, 369 F. Supp. 2d 254, 269-70 (E.D.N.Y. 2005) (Garaufis, J.).

Because of this strong preference for joint trials, and the discretion granted district court judges, the "denial of a severance motion should be reversed only when a defendant can show prejudice so severe as to amount to a denial of a constitutionally fair trial, or so severe that his conviction constituted a miscarriage of justice." United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002) (internal citations and quotations omitted); see also United States v. Yousef, 327 F.3d 56, 150 (2d Cir. 2003) ("[A] district court order denying a Rule 14 motion is considered virtually unreviewable and will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion.") (internal citations and quotations omitted).

The court briefly considers two rationales for severance that are raised by DeFilippo in his May 2005 submission to the court and only alluded to in his September 2005 motion. (DeFillippo Mem. 16-17, Sept. 2005) I then will thoroughly examine three additional grounds for severance argued by DeFilippo and Basciano and consider the Government's motion to exclude the Massino tapes in limine. In his May 2005 motion for severance, DeFilippo asserts that he should be granted a severance from Basciano because of "spillover prejudice" as a result

of Basciano's more serious charges, and to preserve his right to a speedy trial. (See DeFilippo Mem., May 2005.) I then consider DeFilippo's and Basciano's contentions that their defenses are mutually antagonistic, (DeFilippo Mem.17-20, Sept. 2005; Basciano Mem. 13-15), and DeFilippo's contention that the hostility between the parties is grounds for severance (DeFilippo Mem.18-20, Sept. 2005). I will additionally consider whether a joint trial would impinge on Basciano's Sixth Amendment right to counsel or DeFilippo's Fifth Amendment due process right to present a defense. Finally, I consider the Government's motion to exclude the Massino tapes on evidentiary grounds.

I.      Spillover Prejudice

I find spillover prejudice to be an insufficient rationale for severance. Both Basciano and DeFilippo are charged with being captains or "capos" of the Bonanno crime family, participating in loan sharking and illegal gambling, attempted murder, and murder. The only category of major offense that Basciano, but not DeFilippo, is charged with is arson. (S-4 ¶¶ 24-26.) This does not meet the high burden to show that spillover prejudice requires severance in RICO cases, where evidence produced against other co-defendants is often admissible against all of these defendants to show evidence of the conspiracy, even if each had been tried separately. Diaz, 176 F.3d at 103. Furthermore, DeFilippo's original arguments for spillover prejudice focus on the prejudice that DeFilippo would suffer if the Government were to introduce the Massino tapes against Basciano at a joint trial. (DeFilippo Mem.16-20, May 2005) This argument seems to have been replaced with the opposite argument: that DeFilippo needs to introduce the Massino tapes, but such evidence might prejudice Basciano. (DeFilippo's Letter Br., Nov. 30, 2005)

II. Speedy Trial Act

In his May 2005 motion for severance, DeFilippo also asserts that he should be granted a severance from Basciano to preserve his right to a speedy trial. (DeFilippo Mem. 67, May 2005.) DeFilippo's speedy trial argument is irrelevant. Since the Government stated at a status conference on November 23, 2005 that it would proceed with DeFilippo's case first in the event of a severance, DeFilippo's trial will commence within the next six weeks, irrespective of the court's decision on severance.[6]

III. Antagonistic Defenses

"[A]ntagonistic defenses may conflict to such a degree that codefendants are denied a fair trial," United States v. Cardascia, 951 F.2d 474, 484 (2d. Cir 1991)), although "[m]utually antagonistic defenses are not prejudicial *per se* . . . ." Zafiro v. United States, 506 U.S. 534, 538 (1993). The "defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before we will find such prejudice as denies defendants a fair trial." Cardascia, 951 F.2d at 484 (explaining that "[d]efenses are mutually exclusive or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant"). Alternately, antagonistic defenses can merit severance where "antagonism at the *essence* of the defenses prevails to such a degree – even without being mutually exclusive – that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty." Id. Mere finger pointing is not sufficient to warrant severance. United States v. Haynes, 16 F.3d 29, 31-32 (2d Cir. 1994).

---

[6] If severance were to be granted, the Government would have the choice of which defendant to try first. When DeFilippo renewed this motion in September 2005, he had no way of knowing whether the Government would choose to try Basciano first, in which case severance would actually *delay* DeFilippo's trial.

DeFilippo first argues that the defenses are antagonistic in their essence, because Basciano I (S-3) charged Basciano with conspiring to kill DeFilippo. (DeFilippo Mem.17-18, Sept. 2005.) Defilippo argues this puts him in "the unique position of being not merely hostile to, but in fact the government's 'complainant' and a defendant in the same trial." (Id. at 18-19.) While such an occurrence would provide a strong rationale for severance, in this case it is factually incorrect. Basciano has not been charged with conspiring to kill DeFilippo in any of the superseding indictments in Basciano I.[7] Basciano's indictment in Basciano II, effectively severed the offending charge from this case and so DeFilippo's argument need not be considered here.

DeFilippo further argues that his defense is antagonistic toward Basciano because he plans to introduce, "either (a) portions of the Basciano-Massino tapes (inadmissible against Basciano), or (b) non-tape evidence that shifts responsibility for the Sciascia murder from DeFilippo to Basciano." (DeFilippo Reply Letter Br. 3, Nov. 16, 2005 ("DeFilippo Letter, Nov. 2005").) DeFilippo maintains that his defense strategy is to show that John Spirito pulled the trigger in the Sciascia murder, instead of DeFilippo, and that Basciano ordered the killing, instead of Joseph Massino. DeFilippo asserts that establishing this scenario will help him to discredit government witnesses and also to cast doubt on government allegations of his role in the murder. In order to do so, DeFilippo wants to admit Rule 404(b) evidence establishing Basciano's position within the Bonanno crime family and his violent nature. (DeFilippo Letter Br., Dec. 2, 2005)

In a similar vein, Basciano argues that he will be unduly prejudiced by the presentation of

_____

[7]Basciano is charged with conspiring to kill DeFilippo in a different and later indictment. Basciano II (S-3 at Count 6). The court assumes that DeFilippo was merely confused about which charges are found in the different cases and was not trying to mislead the court in any way.

DeFilippo's antagonistic defense, "blaming Mr. Basciano for instigating and perpetrating the crimes for which [DeFilippo is] charged and serving, in effect, as a second prosecutor to advance the government's case against Mr. Basciano." (Basciano Mem. 10, Sept. 2005.) Basciano further argues that since the Government probably could not admit the Massino tapes in a separate trial against Basciano, DeFilippo's admission of the "highly prejudicial" tapes provide grounds for severance because of antagonistic defenses. Basciano asserts that this prejudice may rise to the level of a violation of his due process rights.[8]

I first consider Defendants' motions through the framework provided by Cardascia, requiring that either the defenses be mutually exclusive *or* the antagonism prevails to a high degree at the essence of the defenses. Cardascia, 951 F.2d at 484. Under the first prong of the Cardascia analysis, I conclude that the Defendants' defenses are not mutually exclusive. Even assuming that DeFilippo plans to offer all the evidence that he has asserted, the defenses (on a scale of antagonism) are no more than merely inconsistent or conflicting. DeFilippo seeks to show that Basciano was involved in the Sciascia murder, but Basciano is not charged in that murder, and cannot be found guilty of it. DeFilippo also plans to adduce evidence that would reveal Basciano's power and ambition within the Bonanno crime family. While such evidence

_____

[8] Questions about the admissibility and potential Sixth Amendment issues raised by the tapes are addressed later in this opinion. Defendants assumed in their initial briefings about the tapes that the tapes would be admissible by DeFilippo, (See e.g., Basciano Mem. 10, Sept. 2005) ("These highly prejudicial tapes are inadmissible against Mr. Basciano *if offered by the government* and could not, therefore, be introduced at a separate trial of this case.") (emphasis added.) For the purposes of the antagonism discussion only, I will assume that the tapes are admissible under the Federal Rules of Evidence and that their admission would not violate Basciano's Sixth Amendment rights. I also assume, for the purposes of this section only, that potential non-tape evidence mentioned by DeFilippo as being prejudicial to Basciano is also admissible. (DeFilippo Letter Br., Nov. 16, 2005)

would support the Government's case in Count 1 ("Racketeering") of <u>Basciano I</u> (S-4), standing alone it is insufficient to convict Basciano on Count 1. Furthermore, the Government asserts that it has substantial evidence of Basciano's participation in the racketeering conspiracy, such that any evidence produced by DeFilippo would merely be cumulative and therefore not impermissibly prejudicial. (Oral Argument Transcript 23, Dec. 2, 2005 ("Tr.").)

I next examine whether the antagonism reaches the "essence" of the defenses in this case and find that it does not. At oral argument, DeFilippo's counsel explained that evidence of Basciano's role in the Sciascia murder would help him impeach and discredit government witnesses that had not named Basciano in their explanations of the Sciascia murder. (<u>Id</u>. at 10.) This is not a matter at the essence of DeFilippo's defense.[9] Moreover, DeFilippo's chain of evidence that attempts to inculpate Basciano in the crime, in order to help establish that Spirito – not DeFilippo – pulled the trigger, is weak at best. The Government has produced a note from the New York Police Department investigation of the Sciascia murder suggesting that Basciano ordered the murder and Spirito was possibly the shooter. (Gov't Letter Br., Dec. 7, 2005.) But this note is triple hearsay and DeFilippo has not explained how he could introduce it into evidence. DeFilippo has one other lead of which he has informed the court (a Brady disclosure by the Government that Bruno Indelicato identified Basciano as involved in the murder). Not only is the court skeptical that this evidence is admissible, but is also unclear as to how *Basciano's* role, particularly in *ordering* the murder (which DeFilippo is not charged with), is aimed at raising reasonable doubt instead of merely confusing the jury. Evidence that John

---

[9]Here the court is distinguishing between the goal of impeachment (not the essence of DeFilippo's defense) and the goal of showing another theory of the crime, which may be the essence of his defense.

Spirito pulled the trigger and DeFilippo did not, on the other hand, would be exculpatory and central to DeFilippo's defense. Nonetheless, such direct evidence of Spirito's role would not prejudice Basciano; Basciano is only prejudiced by DeFilippo's confusing "chain" theory.

Even assuming that DeFilippo's chain theory is the "essence" of his defense and requires inculpating Basciano in the crime, that does not satisfy the Cardascia test. Basciano asserts that his defense (viz. that he never killed anyone) will be tainted by evidence that he killed Sciascia. But the essence of his defense is not that he is innocent of the Sciascia murder– it must be that he is not guilty of the murders with which he is charged. Hence, I find that a joint trial will not lead to severe antagonism at the essence of Defendants' defenses.

Basciano encourages the court to follow the reasoning in United States v. Copeland, 336 F. Supp. 2d 223 (E.D.N.Y 2004) (Block, J.). In Copeland, the court found mutual antagonism where "a defendant's counsel becomes a second prosecutor," id. at 224 (citations omitted) and "[t]he jury may convict [the defendant] based upon either the government's theory or [his co-defendant's] theory." Id. As discussed above, the evidence that DeFilippo seeks to admit would assist the prosecutor in proving Count 1, the "Racketeering Conspiracy." But the jury cannot convict Basciano on DeFilippo's proposed evidence alone. Furthermore, although DeFilippo offers a different theory of the Sciascia murder than does the Government, DeFilippo's theory does not require the jury to convict Basciano. Finally, in Copeland, Judge Block limited his decision to a situation where, as in Copeland, "a co-defendant offers, in contradiction of the government's theory, a neutral third party's exculpatory identification testimony implicating another co-defendant." Id. at 225. Until DeFilippo produces a neutral eyewitness to the Sciascia murder that can say that Basciano pulled the trigger, Copeland cannot inform this court's

determination.

IV. Co-defendant Antipathy

DeFilippo further argues that "severance is required because of the unfairness inherent in DeFilippo being tried side by side - literally and figuratively - with an individual who is accused of conspiring to murder him." (DeFilippo Mem.18-19, Sept. 2005.)  The Government alleges in a separate indictment that Basciano wanted to have DeFilippo killed (DeFilippo Mem. 17, Sept. 2005), and it has presented evidence to the court supporting the proposition that DeFilippo threatened Basciano.  Therefore, I must decide whether the hostility between the co-Defendants merits severance.[10]

I find that a joint trial of co-Defendants despite their mutual hostility will not "compromise a specific trial right or prevent[] the jury from making a reliable judgment about [their] guilt or innocence."  United States v. Diaz, 176 F.3d 52, 107 (2d Cir. 1999).  The Second Circuit has held that "mere 'hostility' between [co-defendants] does not warrant severance."  Id.

DeFilippo cites United States v. Palmer, No. 89-0036, 1989 U.S. Dist. LEXIS 6498 (D.D.C. June 8, 1989), for the proposition that a district court should sever if there is mutual hostility between co-defendants, specifically when that hostility rises to the level of alleged attempted murder.  Nonetheless, the instant motion presents a far different set of facts than the one faced by the district court in Palmer.  In Palmer, a co-defendant alleged that the other co-defendants shot at him in an effort to kill him, and that "his participation in the conspiracy [was]

_____

[10] Under this theory of severance, the issue is not related to any conflict that would be caused if Basciano were charged in this trial with unlawful conduct against DeFilippo (or vice versa). (See supra note 7.)  Instead, the issue is whether the mere fact that there is hostility and antipathy between the parties could influence the jury or prejudice the Defendants' ability to present their cases.

due to threats of harm by the co-defendants." Palmer, 1989 U.S. Dist. LEXIS 6498, at *22. The court granted severance because the allegation implicated a core defense of the co-defendant, i.e. that he committed the alleged unlawful acts due to duress. Id. at *21-25. Here, there is no plausible core defense by co-Defendants implicated by the alleged mutual hostility. The court is not aware of any viable duress defense for DeFilippo in Basciano's alleged hostility toward him, or vice versa.

While it is true that the court in Palmer questioned "the fundamental . . . fairness" of trying co-defendants wherein one is an alleged victim of attempted murder by the other co-defendants, id. at *24, I find that the substantially different circumstances in Palmer from those alleged in the instant case justify a different result. Here, the co-Defendants are alleged to have threatened each other or to have conspired to kill each other. Unlike Palmer, in which the co-defendant potentially could have had the other co-defendants testify in support of his duress defense at a future trial without waiving their Fifth Amendment rights, this case presents no potential exculpatory evidence related to the alleged mutual hostility that either of the co-Defendants could present for the other in a severed trial.

While hostility rising to the level of conspiring to murder a co-defendant can at times justify severance, the facts in this case do not rise to that level. The court must also consider the preference for joint trials and the interests of judicial economy. Those factors, along with prejudice to the Government if unable to show all racketeering evidence together if this action is severed, outweigh any prejudice or discomfort caused by the allegations that DeFilippo and

Basciano conspired to kill each other.[11]  See United States v. Urso, 369 F. Supp. 2d 254, 262-63

(E.D.N.Y. 2005) (Garaufis, J.).

Accordingly, I find that the alleged mutual hostility of co-Defendants does not warrant

severance.

V.      Severance and Specific Trial Rights under the 5th and 6th Amendments

Severance is necessary whenever there is a "serious risk that a joint trial would

compromise a specific trial right of one of the defendants."  Zafiro v. United States, 506 U.S.

534, 537 (1993).  Defendants both claim that joint trial would jeopardize their constitutional trial

rights.  Basciano argues that his "Sixth Amendments rights will . . . be violated . . . [and t]here

will thus be insurmountable prejudice, and a clear due process violation, from the introduction of

these tapes that are inadmissible against Mr. Basciano."  (Basciano Letter Br. 1, Nov. 30, 2005).

Although not explicitly expressed, I read DeFilippo's submissions to express concerns about his

Fifth Amendment due process right to present a defense, should he be prevented from

introducing the tapes at a joint trial.  I will examine each of these claims in turn, using severance

standards and analogous case law to set a framework.

*Basciano's Sixth Amendment right to counsel*

The Sixth Amendment right to counsel requires that a defendant have counsel present at

interrogations by the Government after the defendant is indicted.  Massiah v. United States, 377

U.S. 201 (1964).  When the Government uses an agent to solicit information from a defendant

---

[11] Even if the Government (and not DeFilippo) seeks to admit evidence of threats by co-Defendants against each other to show that they are members of a crime family that settles conflicts through violence, such an allegation would not mandate severance. It can be expected that this allegation would simply be denied by the Defendants, and does not pit the co-Defendants against each other.

already under indictment, the fruits of that interrogation are inadmissible by the Government in its case-in-chief.  Id. at 207; Maine v. Moulton, 474 U.S. 159 (1985).  In the process of making the Massino tapes for the Government, Joseph Massino wore a government recording device for the purpose of recording Basciano, sought out Basciano, and engaged in conversation expected to lead to incriminating statements.  The Government may use the tapes against Basciano in any case where he was not yet indicted at the time of those conversations, e.g. Basciano II.  But were the Government to introduce the Massino tapes in the current trial, Basciano I, Basciano's Massiah rights would likely be jeopardized.[12]  Here I am faced with the question of whether *DeFilippo's* introduction of the Massino tapes would raise a Sixth Amendment problem requiring his trial to be severed from Basciano's.

DeFilippo first raised the Sixth Amendment issue in the Reply to his May 2005 motion for severance, but was only able to offer conjectures of the implications because he had not yet reviewed the Massino tapes. (Spirito & DeFilippo Reply Mem. Supp. Mot. Sever Basciano 2, May 23, 2005)  Neither DeFilippo nor any of the other parties raised the potential of a Sixth Amendment violation in their September 2005 pre-trial motions or November 2005 replies, although they already had access to the Massino tapes.  In order to understand more fully whether Basciano's Sixth Amendment rights could be jeopardized if DeFilippo were to introduce the Massino tapes, I requested additional briefing from all of the parties.  (Nov. 22, 2005 Order; Nov. 30, 2005 Order.)  None of the parties found case law directly on point to this issue and I believe this to be a ruling of first impression.

---

[12]As the Government is not attempting to introduce the Massino tapes, this direct question is not before the court.

The parties disagree as to whether DeFilippo's introduction of government tapes would violate Basciano's Sixth Amendment rights to counsel.[13]  Nonetheless, all parties involved have agreed that even the potential violation of Basciano's Sixth Amendment right to counsel (viz. the introduction of the Massino tapes) would be valid rationale to sever (Tr. at 13; Basciano Letter Br., Nov. 30, 2005; DeFilippo Reply Letter Br., Nov. 16, 2005), although none of the parties thoroughly briefed how DeFilippo's introduction of the tapes would (or would not) violate Basciano's specific constitutional rights.  Hence, because it was not thoroughly briefed and because the parties' agreement makes a finding unnecessary, I do not reach a conclusion respecting whether DeFilippo's admission into evidence of the Massino tapes would directly violate Basciano's Sixth Amendment right to counsel.  I, do however, assume, for the discreet purposes of Basciano I, that the introduction of evidence by DeFilippo in a joint trial (evidence that would be inadmissible by the Government against Basciano in a separate trial) is sufficiently prejudicial to be analyzed as though it implicated Basciano's Sixth Amendment rights.

An implication of Basciano's rights, by itself, would suggest the need to exclude the

---

[13]In fact the parties themselves do not seem to offer a consistent argument on this point. In his letter of November 30, 2005, Basciano "acknowledge[s] that DeFilippo's offering of the tapes does not constitute state action," while still arguing such an act by DeFilippo would violate Basciano's Sixth Amendment rights.  (Basciano Letter Br. 1, Nov. 30, 2005.)  The Government, on the other hand, submitted a brief on November 29, 2005, that "in an excess of caution - and for the purposes of [this case]," it "assumes that the introduction of these recordings by the defendant DeFilippo may violate the defendant Basciano's Sixth Amendment right to counsel." (Gov't Supplemental Opp. Def's Mot. Severance 1, Nov. 29, 2005.)  At oral argument, the Government asserted that it was still an open question whether the statements could be introduced against Basciano but conceded to the court that, "if you rule these tapes admissible, there's a severance.  There's no question about it." (Tr. at 13-14.)  DeFilippo did not specifically address this question in a submission to the court; in response to the court request for briefing on the Sixth Amendment question, DeFilippo wrote, "I will defer to Mr. Basciano's submissions regarding his client's rights." (DeFilippo Letter Br., Nov. 25, 2005.)

evidence. <u>Massiah</u>, 377 U.S. 201 (1964). However, in this case, I must incorporate into the analysis the federal court preference for joint trials and DeFilippo's interests in introducing the tapes. To do so, I look to analogous case law to provide the most useful framework for considering this issue. Basciano cites to <u>Bruton v. United States</u>, 391 U.S. 123 (1968), a case dealing with the Sixth Amendment right to confrontation. In <u>Bruton</u>, a Government witness testified that Bruton's co-defendant had implicated both himself and Bruton in an oral confession that occurred in the course of interrogation. Although the trial court instructed the jury not to use that testimony against Bruton, the Supreme Court found that severance was necessary because Bruton did not have a chance to confront his accuser (his co-defendant) and the court's redaction and jury instruction were insufficient to protect him. <u>Id.</u> at 126. In this case, like <u>Bruton</u>, the question is whether a joint trial is possible when introduced evidence implicates the constitutional rights of one co-defendant, but not the other. This court now adopts the <u>Bruton</u> analysis for the purposes of deciding this issue, following <u>Bruton</u>'s framework regarding when a trial should be severed and, conversely, when evidence can be redacted in a joint trial so as to protect the Defendant against whom the evidence would be inadmissible by the Government.

I now turn to the <u>Bruton</u> test described by the Second Circuit in <u>United States v Marin</u>, 669 F.2d 73 (2d Cir. 1982). <u>Marin</u> holds that a defendant's confrontation clause rights are violated when "a statement of a nontestifying codefendant is admitted and is 'powerfully incriminating' of or 'devastating' to the defendant." <u>Id</u>. at 83-84 (citing <u>Bruton</u>, 391 U.S. at 135-136). In other words, the Sixth Amendment confrontation rights are violated only when a co-defendant's redacted statement is "clearly inculpatory of the defendant and vitally important to the prosecution." <u>Marin</u>, 669 F.2d at 83-84 (internal quotations and citations omitted).

The Massino tapes, as a whole, are clearly inculpatory of Basciano. Throughout the tapes, he makes statements that appear to implicate himself in a racketeering conspiracy, as well as in murder or attempted murder, among other criminal acts. (See Massino tapes). While the statements themselves are arguably not vitally important to the prosecution,[14] as a whole the tapes are sufficiently incriminating to be barred by Bruton. Nonetheless, it is equally clear that not every statement of the tapes reaches the level of "powerfully incriminating" as required by Bruton. Furthermore, redacted sections of the tapes would be permissible in a joint trial as long as the redacted excerpts satisfy the framework of Bruton and Marin.

Using a Bruton analysis, I find that the introduction of the entire Massino tapes would have a prejudicial effect on Basciano that would implicate his Sixth Amendment right to counsel. I nonetheless conclude that non-inculpatory statements and statements redacted in a way to protect Basciano do not offend Basciano's Massiah rights to the point of requiring a severance in this trial.

*DeFilippo's Fifth Amendment Rights*

DeFilippo argues that the Massino tapes are admissible under Chambers v Mississippi, 410 U.S. 284 (1973). (DeFilippo Letter Br., Dec. 2, 2005.) I construe his argument to imply that his Fifth Amendment right to due process would be violated if the court barred this evidence. The Supreme Court in Chambers, 410 U.S. at 294, explains this right:

> The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Mr. Justice

---

[14]The prosecution does not seek to introduce the tapes in the Basciano I trial. I consider how important the tapes are to DeFilippo's defense in other sections of this opinion.

Black, writing for the Court in In re Oliver, 333 U.S. 257, 273 (1948), identified these rights as among the minimum essentials of a fair trial: 'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense--a right to his day in court--are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.'

The Second Circuit has found that it is "a fundamental matter of due process that the defendant in a criminal case has the right to present a defense, that is, to present to the jury admissible evidence that might influence the determination of guilt." Grotto v. Herbert, 316 F.3d 198, 205-06 (2d Cir. 2003); see Taylor v. Illinois, 484 U.S. 400, 409 (1988). Nonetheless, the trial judge has considerable discretion in seeing that the trial is conducted in a "fair, efficient, and orderly manner." Grotto, 316 F.3d at 206; see Taylor, 484 U.S. at 414-15.

Again the court looks to analogous case law. To establish a violation of the Fifth Amendment right to present a defense when the government misplaces evidence, a criminal defendant must show that the government acted in bad faith and the defendant was deprived of "material and exculpatory evidence that could not be reasonably obtained by other means." United States v. Williams, 205 F.3d 23, 30 (2d Cir. 2000). Additionally the defendant "must demonstrate that the absence of fundamental fairness infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990) (internal quotations omitted).

Under this analysis, DeFilippo has not established that a violation of his Fifth Amendment right to present a defense will occur if he is precluded from offering the Massino tapes. The tapes are not exculpatory and the substantive evidence on the tapes (i.e. the content) is available through other means and is expected to be presented by the Government through

other admissible evidence. Therefore, exclusion of the tapes would not cause fundamental

unfairness or prevent a fair trial.

I now turn to analogous case law, which addresses the question of severance when one

defendant seeks to admit his or her co-defendant's testimony at trial. Although DeFilippo does

not seek Basciano's testimony as a witness, he does seek to use his words in a way that could

implicate Basciano's constitutional privileges. The Second Circuit, in United States v.

Finkelstein, 526 F.2d 517 (2d Cir. 1975), adopted a test to determine when severance is

appropriate if one defendant seeks to introduce his co-defendant's exculpatory testimony.

According to Finkelstein, the following factors are to be considered:

>  (1) the sufficiency of the showing that the co-defendant would testify at a
> severed trial and waive his Fifth Amendment privilege; (2) the degree to which
> the exculpatory testimony would be cumulative; (3) the counter arguments of
> judicial economy; and (4) the likelihood that the testimony would be subject to
> substantial, damaging impeachment.

Finkelstein, 526 F.2d at 523-24 (internal citations omitted) (emphasis added). First, the

testimony that DeFilippo seeks to admit from the tapes is not, in itself, exculpatory. In fact, there

appears to be no mention of the Sciascia murder on any part of the Massino tapes. DeFilippo's

arguments supporting his need for the tapes present a long and complicated chain between the

evidence directly on the tapes and the conclusion he hopes the jury will reach. (DeFilippo Letter

Br., Dec. 2, 2005.) Second, the portions of the tapes that DeFilippo has identified as potential

substantive evidence are cumulative, given the supposition that the Government will seek to

introduce evidence against Basciano on all elements of the racketeering charge, including his role

in the conspiracy and his relationships with other members of the conspiracy. (Tr. at 23, 57-58;

see infra.)

Using this analysis, I conclude that DeFilippo's Fifth Amendment right to present a defense is not affected by the exclusion of the Massino tapes and, therefore, does not raise a cognizable rationale for severance.

VI. Admissibility of Massino Tapes

I have ruled that a joint trial is possible because the Massino tapes can be excluded without prejudicing DeFilippo's rights, but I also found that some portions of the tapes may be included in a joint trial without jeopardizing Basciano's rights under the Sixth Amendment, if redacted in accordance with Bruton. I now consider whether DeFilippo can offer any portions of the Massino tapes under the Federal Rules of Evidence.

The court directed DeFilippo to "outline what specific statements from the tape he would seek to be admitted in his trial; how such statements are exculpatory and/or relevant; and how they would be admissible under the Federal Rules of Evidence and relevant case law." (Nov. 30, 2005 Order.) In response, DeFilippo identifies twenty-two excerpts of the Massino tapes; he then explains how they are relevant to four points he plans to argue in his defense; and finally, asserts that statements from the tapes can be admitted under Fed. R. Evid. 40 (b), 804(b)(3), 803(3), 803(6) and 807, under the right to present a defense pursuant to Chambers v. Mississippi, 410 U.S. 284 (1973), and for impeachment purposes. I hold that the statements DeFilippo has identified for substantive use are excluded under Fed. R. Evid. 403, but that the statements he has identified for impeachment (to show bias and to show untruthfulness) can be admitted if redacted in conformance with Bruton. I do not reach the question of hearsay exceptions, reserving any objections in that area until trial.

*1.    Statements Showing that Basciano Had the Authority to Order the Sciascia*

DeFilippo seeks to have admitted portions of the Massino tapes that suggest that Basciano had the authority within the Bonanno crime family in 2003-2004 to order an assassination. (DeFilippo Letter Br. 2-5, Dec. 2, 2005.) This, DeFilippo argues, is relevant to show that Basciano did order the murder of Sciascia in 1999. (Id.) DeFilippo further urges that this court rule relevant and admissible portions of the Massino tapes that show Basciano's trust of Spirito, under the theory that Basciano would be more likely to order Spirito than DeFilippo to kill Sciascia. (Id. at 3.) Because the two theories form part of the same chain, I will analyze them together. DeFilippo asserts his need to offer this evidence as substantive evidence to discredit the Government's theory of the crime in general, and specifically to discredit a potential government witness, Salvatore Vitale, the former underboss of the Bonanno crime family. (Tr. at 10.)

Neither Salvatore Vitale, nor any other witness (other than Joseph Massino or Basciano) could be permitted to testify as to the contents of a tape recorded conversation to which he or she was not a party; and extrinsic evidence is not allowed for impeachment purposes. Fed. R. Evid. 608(b). Therefore, the tapes are inadmissible for direct impeachment of Salvatore Vitale. But, as I cannot foresee all possible testimony offered by witnesses, I do not rule on the question of whether the tapes could be used to impeach any witness other than Joseph Massino. See infra. Although I am skeptical of the utility of the tapes for this purpose, I will reconsider the use of portions of the tapes for impeachment purposes should the parties bring to my attention any permissible uses thereof.

The chain of inferences required to link Basciano's authority within the Bonanno crime

family and his trust of Spirito to DeFilippo's lack of culpability in the Sciascia killing is long and weak. The statements proposed by DeFilippo that Basciano had power in 2004-05 (DeFilippo Letter Br. 2-5, Dec. 2, 2005) are only marginally relevant to show that he not only had power but ordered this specific murder in 1999, particularly given the apparent lack of other admissible evidence to corroborate that theory.[15] Even less relevant are Basciano's comments on the tapes that Spirito should be a captain (id. at 6), and that Spirito is not someone Basciano wants to murder. (Id. at 6). Such statements do not suggest a special relationship between Basciano and Spirito since Basciano names other people that he actually *did* appoint captain on the Massino tapes (id. at 2-4) and barely tie Basciano to Spirito in the present time, much less suggest their complicity in 1999. However, I find that the portions of the taped conversation that describe Basciano's power in the Bonanno crime family in 2004, and his trust of Spirito satisfies Fed. R. Evid. Rule 401's expansive definition of relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see, also, U.S. v. Abel, 469 U.S. 45, 48-49 (1984); Girden v. Sandals Int'l, 262 F.3d 195, 199 (2d Cir. 2001).

The Federal Rules of Evidence further direct that all relevant evidence is admissible unless precluded by the Rules, the U.S. Constitution, or an Act of Congress. Fed. R. Evid. 402. Despite the expansive definition of relevant evidence under Rule 401, Rule 403 grants district courts the discretion to exclude otherwise relevant evidence if its "probative value is substantially

---

[15] To the contrary, Joseph Massino, admittedly the boss of the Bonanno crime family at the time of the Sciascia murder was not indicted until 2002. There was ample testimony in Massino's trial that a murder of a fellow member of the Bonanno crime family is not committed without the direct approval of the boss. Moreover, Massino allocuted to personally giving the order to murder Sciascia in his guilty plea of June 23, 2005.

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; see United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (upholding conviction in which excluded defense evidence was of little or no relevance to crimes charged in the case, but had a likely effect of shifting focus away from relevant evidence to the tangentially related misdeeds of another); United States v. Deutsch, 987 F.2d 878, 884 (2d Cir. 1993) (a witness is not required to take the stand merely to invoke the Fifth Amendment privilege; the marginal probative value to that evidence was substantially outweighed by unfair prejudice).

While I find that the portions of the Massino tapes that show Bascino's authority and trust of Spirito are relevant under the expansive language of Rule 401, I am excluding this evidence because its minimally probative value is substantially outweighed by the "needless presentation of cumulative evidence." Fed. R. Evid. 403. Basciano is charged with participating in a racketeering conspiracy between January 1979 and January 2005, in which he allegedly was:

> employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as denied in Title 18, United States Code, Sections 1961(1) and (5).

(S-4 ¶ 14.)

The Government's case-in-chief is expected to introduce evidence supporting each element of that indictment, including that Basciano had a position of authority within the Bonanno family, and that he associated with other members of the Bonanno family. Respecting

25

Basciano's position within the crime family, the Government stated in oral argument that it will bring "a witness that will testify that Mr. Basciano took over the Bonanno Family as the acting boss of the Bonanno Family after Mr. Massino was arrested, incarcerated." (Tr. at 23.) Respecting Basciano's capacity to plan and/or commit murders, "there's a tape recording, which is admissible, [in] which Mr. Basciano himself is talking about clipping people repeatedly, about whacking people, clipping people." (Tr. at 57.) Respecting the relationship between Basciano and John Spirito, "there are any number of surveillance photos, which we've produced in discovery, which show Basciano and Spirito together, which show Basciano and DeFilippo together, which show DeFilippo and Spirito together. . . . [O]n Mr. Basciano's December 21st, 2003 tape, in which he's talking to James Tartaglione, he specifically acknowledges he knows who Johnny Joe [Spirito] is, that he likes Johnny Joe [Spirito], that Johnny Joe Spirito is a stand-up guy, somebody that wouldn't cooperate." (Tr. at 58.) The Government explained at oral argument that DeFilippo is "talking about the relationship between Basciano and Johnny Joe [Spirito], a relationship, which we'll prove because they're both involved in the Bonanno Family..." (Tr. at 59.) The Government's case-in-chief against Basciano will provide DeFilippo with ample opportunity to persuade the jury to infer that Basciano's authority to have Sciascia murdered and his relationship with Spirito casts doubt on DeFilippo's participation.

Finally, I do not find that excluding portions of the Massino tapes that show Basciano's authority and trust of Spirito unfairly compromises DeFilippo's right to a fair trial under Chambers v. Mississippi, 410 U.S. 284 (1973). Chambers does not stand for the proposition that DeFilippo has the right to present all relevant evidence, but rather that evidentiary rules "may not be applied mechanistically to defeat the ends of justice." Id. at 313. Under the analysis, supra, I

do not find a violation of <u>Chambers</u> in the exclusion of any part of the Massino tapes.

Accordingly, the portions of the tape that show Basciano's authority within the Bonanno crime family and his relationship with Spirito are precluded from being introduced as substantive evidence under Rule 403. As I find the portions of these tapes showing Basciano's authority in the Bonanno family and his trust of Spirito excluded, I need not reach the question of their admissibility under the exceptions to the hearsay rules.

2.   *Statements to Impeach Massino by Showing a Motive to Falsely Implicate DeFilippo*

DeFilippo seeks to admit several excerpts from the Massino tapes that involve derogatory statements about DeFilippo. These statements are relevant under Fed. R. Evid. 401 to show Massino's motive to testify falsely against DeFilippo. Unlike direct impeachment for truthfulness, a witness' bias or reason to fabricate can be established by extrinsic evidence because bias is not included in Fed. R. Evid. 608(b). <u>See</u>, <u>e.g.</u>, <u>United States v. Abel</u>, 469 U.S. 45, 55-56 (1984); <u>Justice v. Hoke</u>, 90 F.3d 43 (2d Cir. 1996). As Joseph Massino is expected to testify as part of the Government's case against DeFilippo, DeFilippo is permitted to present otherwise-admissible extrinsic evidence that goes to show Mr. Massino's bias against DeFilippo.

For the question of severance, the only objectionable element about these excerpts is that they also contain relevant statements by Basciano; in fact some of the most derogatory language is spoken by Basciano. In a joint trial, the fact that the statements were made by Basciano is likely to prejudice or confuse the jury and may implicate Basciano's Sixth Amendment rights. Nonetheless, severance is not warranted where other, less severe, methods for curing the prejudice are available. <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993).

One less severe method available is redaction of Basciano's name from the tape and transcripts, as they are used to establish any bias Joseph Massino may have against DeFilippo. DeFilippo claims that redaction is not a possible cure of the problem because it is important to establish with whom Mr. Massino is speaking.[16] (Tr. at 47-49.) Nonetheless, it is unclear what about Mr. Basciano's name in particular could be probative to the matter of Massino's bias if he is otherwise permitted to explain that the unidentified speaker on the tapes is a high-ranking Bonanno family member with a close relationship to Massino. The court finds that the prejudice to Basciano of identifying him substantially outweighs any probative value of the inclusion of Basciano's name in the conversations. Fed. R. Evid. 403.

For a redacted version of the relevant portion of the Massino tapes to show Mr. Massino's

---

[16]DeFilippo argues that it is necessary to show Basciano's hatred of DeFilippo in order to reveal Joseph Massino's bias against DeFilippo because it "suggest[s] that Massino would falsely implicate DeFilippo to (1) protect Basciano at DeFilippo's expense, if Basciano in fact were implicated in the Sciascia murder; and (2) even if Basciano were not responsible for the Sciascia murder to act consistently with his preference for Basciano and Basciano's dislike of DeFilippo." (DeFilippo Letter Br. 6, Dec. 2, 2005.) As Massino was taping Basciano in order to help the Government indict and convict Basciano in a future case, where Basciano may face the death penalty, the court finds it extremely unpersuasive to argue that the Massino tapes can be used to show Massino's favoritism toward Basciano.

The court also notes that while DeFilippo has asserted in several of his court submissions that he wishes to show Basciano's antipathy toward DeFilippo as part of his chain theory to discredit the Government's theory on the Sciascia murder, he did not submit any statements to the court on December 2, 2005 for that purpose. The relevance of such evidence appears to be extremely low. Therefore any such evidence would be excluded under the Bruton and Marin framework in Section V of my analysis, supra. The court conceives of no way to redact the tapes for this purpose without revealing Basciano's name. The revelation that Massino taped Basciano could lead the jurors to suspect all redacted portions of the Massino tapes were also referring to Basciano, thereby violating Bruton. As I have previously held that it does not implicate DeFilippo's constitutional rights to exclude the tapes in a joint trial, I hereby exclude any portion of the tapes offered for the purpose of substantive evidence to show Basciano's hostility toward DeFilippo. Should parties seek a reconsideration of this issue, during trial they may submit proposed redacted statements in compliance with this decision.

bias against DeFilippo and yet protect Basciano, the redactions must meet the standards

established by Bruton v. United States, 391 U.S. 123, 133-34 (1968), and its progeny. See, e.g.,

United States v. Marin, 669 F.2d 73, 83 (2d Cir. 1982). Should Joseph Massino testify, all

parties shall submit proposed redacted versions of the portions of the Massino tapes relevant to

show Mr. Massino's bias on cross-examination or to rehabilitate him on re-direct. Such

submissions should be made to the court prior to the time at which Mr. Massino is expected to

face cross-examination and should be in conformance with the law under Bruton. The court

reserves the decision about the admissibility of these redacted statements under hearsay

exceptions until it has reviewed the statements.

3.      *Statements to Show Joseph Massino's Untruthfulness*

Lastly, DeFilippo seeks to admit portions of the Massino tapes that show Joseph

Massino's untruthfulness. Rule 608(b) provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or
> supporting the witness' character for truthfulness . . . may not be proved by
> extrinsic evidence. They may, however, in the discretion of the court, if probative
> of . . . untruthfulness, be inquired into on cross-examination of the witness . . .
> concerning the witness' character for . . . untruthfulness . . . .

Fed. R. Evid. 608(b). The Second Circuit has "repeatedly emphasized" that "'[t]rial judges retain

wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on

such cross-examination based on concerns about . . . prejudice, confusion of the issues, . . . or

interrogation that is repetitive or only marginally relevant.'" United States v. Crowley, 318 F.3d

401, 416 (2d Cir. 2003) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)); see also

United States v. Flaharty, 295 F.3d 182, 191-92 (2d Cir. 2002), cert. denied, 123 S. Ct. 37

(2002).

If Joseph Massino testifies against DeFilippo, Rule 608(b) clearly bars the admission of the Massino tapes because they would be as extrinsic evidence offered "for the purpose of attacking . . . the witness' character for truthfulness . . . ." Fed. R. Evid. 608(b). However, Rule 608(b) affords this court the discretion to consider whether to allow DeFilippo to cross-examine Mr. Massino concerning the content of the tapes, i.e. his statements made on the tapes that show his untruthfulness.

DeFilippo will be permitted under Rule 608(b) to question Mr. Massino regarding whether he agreed to become a government informant, and whether he recorded a conversation with another member of the Bonanno organized crime family for the Government's use. Further, DeFilippo's cross-examination of Mr. Massino regarding any untruthful or inconsistent statements he made in the Massino tapes is sufficiently probative to outweigh any possible confusion to the jury. However, there is no probative value to DeFilippo and substantial prejudice to Basciano in allowing Basciano's name to be known to the jury as the person that Mr. Massino was conversing with on the Massino tapes. As a result, no mention of Basciano – by name or by suggestion – will be permitted in the questioning of Mr. Massino with statements from the tapes. Redactions must be in compliance with Bruton.

DeFilippo in his submission to the court did not provide Joseph Massino's actual statements made on tapes that demonstrate his untruthfulness. DeFilippo is directed to submit to this court ex parte the redacted statements from the Massino tapes that he wishes to use in his cross-examination of Mr. Massino to show his untruthful character. Basciano is similarly instructed, should he choose to cross-examine Massino in a similar manner. Defense submissions to the court should be made prior to the cross-examination of Mr. Massino. In

addition, as Rule 608(b) also allows for questions regarding conduct that shows the truthfulness of a witness, Fed. R. Evid. 608(b), the Government can likewise submit to the court <u>ex parte</u> redacted statements, if any, from the Massino tapes it may wish to use to rehabilitate Mr. Massino.  Government submissions to the court should be made prior to any re-direct of Mr. Massino.  All parties are instructed to submit proposed limiting instructions on how to refer to Basciano as the other recorded party in the Massino tapes, so that the redacted statements will comply with <u>Bruton</u>.

**CONCLUSION**

The United States Supreme Court long ago declared that "[a] defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953). In the context of severance, there are many competing interests that must be considered. A trial court is given wide discretion because it is best suited to weigh all of the considerations before it and to ensure a fair outcome. By balancing the interests of the court, Basciano, DeFilippo, and the Government, I have ensured that this will be a fair trial. Defendants' motions for severance are DENIED in their entirety. The Government's motion in limine to exclude the Massino tapes from introduction as evidence is GRANTED in part and DENIED in part.

As jury selection of an anonymous and semi-sequestered jury will commence on January 17, 2006, the parties are directed to jointly submit to the court, under seal, a proposed juror questionnaire, along with any additional questions that they cannot agree upon, not later than Wednesday, January 4, 2006.

SO ORDERED.

_____/s/_____
Dated: December 12, 2005                    Nicholas G. Garaufis
Brooklyn, N.Y.                              United States District Judge