UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------X
UNITED STATES OF AMERICA

    - against -                                MEMORANDUM & ORDER
                                                      03-CR-929 (S-5) (NGG)

VINCENT BASCIANO and
PATRICK DEFILIPPO,

               Defendants.
-----------------------------------------------X

GARAUFIS, United States District Judge.

On the first day of trial in the above-captioned case, February 27, 2006, the Government brought to the court's attention an article printed in New York NEWSDAY, a local daily newspaper. The article attributed a statement to all three of defendant Vincent Basciano's attorneys and directly quoted one of them, Barry Levin ("Mr. Levin"). The relevant section of the article stated the following:

> Defense attorney Barry Levin, with lawyers Peter Quijano and Ying Stafford, said government witnesses' stories don't mesh.
>
> "The government's main witnesses in regard to the Santoro homicide will each testify to a materially contradictory version of what happened," Levin said yesterday, referring to Massino, Vitale and Cicale.

Anthony DeStefano, <u>First Shots Fired in Mob Trial</u>, NEWSDAY (New York), Feb. 27, 2006. (Court Ex. 5) (Attached as Appendix A). In court, after giving Mr. Levin an opportunity to be heard, I fined him $5000 for violating the rule I had established for this trial that attorneys not speak to the press regarding trial matters. I now file this Memorandum & Order (M&O) to complete the record on this matter.

1

**BACKGROUND**

On January 17, 2006, the first day of jury selection in this case, the New York NEWSDAY published an article quoting Mr. Levin. Of relevance, was the following section of the article

> Basciano's attorney, Barry Levin, said it was clear that Massino, who became a government informant in 2004, was the source of the new allegations.
>
> "If they really had proof of the allegations, they would be in the indictment," Levin told Newsday yesterday.

Anthony M. Destefano, Move to Expand Charges, NEWSDAY (New York), Jan. 17, 2006 (Attached as Appendix B).[1] As reporters have been accused of misstating comments by attorneys, I responded by reminding the parties of their obligations to refrain from speaking with the press. I stated

> I'm going to ask everyone to refrain from making statements to the press regarding issues that need to be decided by the court, and it's appropriate that response be made to the court and not to the public at large.
>
> The statement that is alleged to have been made to Newsday by Mr. Levin presupposes a certain fact, and that is that Mr. Massino is the source of this information, which may or may not be true; it may be in part true and it may be in part not true, and to single out Mr. Massino based on conjecture is also

---

[1]Mr. Levin was quoted widely in two additional articles that week. According to NEW YORK DAILY NEWS, Mr. Levin said, "If they had evidence of these alleged murder plots, they would have charged them in the indictment. The thing I find amazing is the government just accepts what Joe Massino says without any verification." John Marzulli, Capo's Gal on Hit List, NEW YORK DAILY NEWS, Jan. 17, 2006 (Attached as Appendix C). In the "Gangland News" column that is published online, the following was attributed to Mr. Levin,
> Bacsciano's [sic] attorney, Barry Levin, labeled the added starter allegations as "self-serving statements by Joe Massino" that the "the [sic] government is using (as) an end run to introduce inflammatory allegations that will prejudice my client to the jury. If they had sufficient evidence of these absurd allegations why isn't it in the indictment?"

Jerry Capeci, This Week in Gang Land: Vinny Gorgeous Can Handle Dirty Work, at http:www.ganglandnews.com/column.htm, Jan. 19, 2006 (viewed on Jan. 20, 2006) (attached as Appendix D).

2

> a disservice to the court. It may have been inadvertent, but we should try to avoid making these statements to the media.
>
> The media is extremely adept at picking up on filings to the court; it doesn't take very long, and since this group of lawyers – and I'm talking about both tables – is extremely adept at shooting faxes to the courthouse, certainly you could make your position known in a letter to the court so that I don't have the response read to me by someone over the telephone on Monday morning at 7 o'clock based on what is in the newspaper.
>
> Just be very careful about this.

(Tr. Proceedings Jan. 17, 2005, at 31-32.) In direct response, Mr. Levin stated, "Yes, your honor." (Id. at 32.)

On January 18, 2006, in the midst of a sealed sidebar discussion, I made further admonishments to the parties, after I learned that defendant Vincent Basciano had spoken directly to the press representatives in the gallery, answering a question asked of a witness that was subject to a sustained objection. (See Tr. Proceeding, Jan. 18, 2006, at 313-316 (sealed Jan. 18, 2006).) At the sidebar conference in response to this conduct, I strongly reminded the parties of the consequences for violating the court's instructions, particularly as they pertained to the practice of putting prejudicial information out to the press. The relevant portions of this discussion are:

> The Court: I [have] got to tell you something, I'm not Judge Ito. I'm going to put a gag order on this case very quickly if anything else happens.
>
> No one is going to talk to anybody and if you do you're going to be losing money on this case not making money on this case. . . .
>
> Mr. Levin: I would –
>
> The Court: Please. I will give you as much latitude as is reasonable to submit your proof, I am more than willing to do that and to deal with other extrinsic matters as well, but I can't deal with a free-for-all here. . . .

3

> It's very troubling to me. . . .
> I'm going to set up a bunch of rules about [this] case. I once taught kindergarten, so I'm going to do for you what I did for children who didn't know how to walk a line, I'm going to set up rules and we're going to follow the rules and if you don't follow the rules, then there will be sanctions.

(Id. at 315-16.)[2]

Last week, there was an article that quoted Levin saying, of his client, "he's associated with these people [organized crime types] for 25 years, but he's made his living as a legitimate businessman." John Marzulli, Trials's All Chic to Him, NEW YORK DAILY NEWS, Feb. 21, 2006 (Attached as Appendix E).

When the most recent, February 27, 2006 NEWSDAY article was brought to the court's attention, I gave Mr. Levin an opportunity to explain the situation. He stated the following,

> "The answer to the first question [asking whether I had a conversation with Mr. DeStefano] is yes. The answer to the second question is that is not an accurate reflection of what I said to Mr. DeStefano.
>
> The point that was made is, I said I would be representing Mr. Basciano with Peter Quijano and Ying Stafford. I was then asked whether I thought the government witnesses would be good and I responded they – the government witnesses will contradict one another. I did not mention any of them by name.
>
> The statement in and of itself that I made I do not believe violates the local rule.

(Trial Tr., Feb. 27, 2006, at 2090). Mr. Levin went on to say, "I interpreted your remarks at side bar last month was to refrain from making individual comments about the witnesses in a disparaging way. I made what is at best a general statement about contradictory evidence." (Id.

---

[2] The court hereby unseals a redacted version of the transcript necessary for determining the issues in this M&O. The unsealed portion is attached as Appendix F. An unredacted version of the transcript remains under seal.

4

at 2091.)

**ANALYSIS**

The District Court for the Eastern District of New York has a local rule regarding interactions between attorneys and the media in a criminal trial. Local Criminal Rule 23.1 (Free Press-Fair Trial Direct) says, in part:

> (c) During a jury trial of any criminal matter, including the period of selection of the jury, no lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial; except that the lawyer or the law firm may quote from or refer without comment to public records of the court in the case.
>
> (d) Statements concerning the following subject matters presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule: . . .
>
>> (4) The identity, testimony or credibility of prospective witnesses, except that the lawyer or law firm may announce the identity of the victim if the announcement is not otherwise prohibited by law; . . .
>>
>> (7) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

Mr. Levin's statement to <u>Newday</u> reporter Anthony DeStefano violated the local rule as it pertains to the identity and credibility of prospective witnesses, as it represents an opinion to the accused's guilt or innocence, on the merits of the Government's case, and on the evidence in the case. Mr. Levin has indicated that he is familiar with the relevant local rules. I therefore find that Mr. Levin has explicitly violated my warnings about speaking with the press, and as he has done so in a manner that "presumptively involve[s] a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of

5

justice." Local Crim. R. 23.1(d).

The court has inherent power to levy civil sanctions "for disobeying the court's orders." Mickle v. Morin, 297 F.3d 114 (2d Cir. 2002) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43, 49-50 (1991)). The Supreme Court has found "impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." United States v. United Mine Workers, 330 U.S. 258, 293 (1947). A proper purpose for the imposition of civil sanctions is "to coerce the [party] into compliance with the court's order." Id. at 303. Before imposing sanctions, the court must afford "notice and opportunity to be heard" to the person it proposes to sanction. In re Ames Department Stores, Inc., 76 F.3d 66, 70 (2d Cir. 1996). The court's decision must be "based on clear evidence and must be accompanied by a high degree of specificity in the factual findings." Mickle, 297 F.3d at 125-26 (internal quotations and citation omitted).

I find that Mr. Levin was under notice as to the rule of the court and to the potential imposition of monetary sanctions. I further find that Mr. Levin was given an opportunity to be heard on this subject. As a response to Mr. Levin's repeated behavior in talking to the press, as specified above, and his own admission that he engaged in prohibited conduct, I ruled in court on February 27, 2006 that he was in civil contempt of court for violating my admonitions and the court rules. In order to compel future compliance with these rules, which is necessary to protect the integrity and fairness of this trial, I fined Mr. Levin $5000. I then warned him that if a $5000 fine was not sufficient to compel future compliance, I would double the fine for each future violation until I found a fine sufficiently high to compel future compliance. (See Trial Tr. of Feb.

6

27, 2006 at 2091.)  I hereby reiterate in writing the imposition of this sanction.

**CONCLUSION**

I take my responsibilities in ensuring the integrity and fairness of this trial very seriously. The violation of a court instructions intended to protect the jury from inappropriate information that is directly attributable to an attorney in this case and an officer of this court is a serious matter.  I hereby offer this M&O in order to complete the record on this issue.

SO ORDERED.

Dated: February 28, 2006  
Brooklyn, N.Y.

\_\_\_/s/_____  
Nicholas G. Garaufis  
United States District Judge