UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------X
UNITED STATES OF AMERICA

   - against -                                MEMORANDUM & ORDER
                                                03-CR-929 (S-5) (NGG)

VINCENT BASCIANO and
PATRICK DEFILIPPO,

                  Defendants.
---------------------------------------------X

GARAUFIS, United States District Judge.

       On February 17, 2006, I issued a Memorandum & Order ("Feb. 17, 2006 M&O") in response to a motion by the United States ("Government") to introduce uncharged acts of misconduct by defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo") (collectively "Defendants") at trial in the above captioned case. A portion of that ruling depended on the defendants' concession of the existence of the Bonanno organized crime family enterprise. The Government wrote the court on March 2, 2006 to "apprise the Court of the legal insufficiency of the defendants' purported stipulation to the fourth element of the racketeering offense." (Gov't Ltr. of Mar. 2, 2006, at 1.) The Government requested that the court reconsider its Feb. 17, 2006 M&O and allow the Government to admit evidence of certain uncharged acts by Basciano, or alternatively, requests an express stipulation to the fourth element by defense counsel. (Id. at 5-6.) For all of the reasons set forth below, the Government's request is denied.

1

BACKGROUND

On February 17, 2006, I issued a ruling in response to the Government's motion to introduce evidence of uncharged acts of misconduct by defendants. In that decision, I denied the Government's motion to admit uncharged acts of misconduct as substantive enterprise evidence because Basciano had agreed not to contest the existence of the Bonanno organized crime family (OCF) enterprise. (Feb. 17, 2006 M&O, at 4.) I wrote that:

> the exact limits of Basciano's concessions are unknown. Therefore this decision cannot dispose of all issues in this regard and some will need to be ruled on during the trial. I hereby provide notice, however, that the Government will likely be allowed to introduce evidence to prove all counts of the indictment that Basciano and DeFilippo seek to contest at trial.

(Feb. 17, 2006 M&O, at 5.) As a result of this decision, the Government is permitted only to introduce uncharged acts of misconduct under Federal Rule of Evidence 404(b) ("Rule 404(b)"). The decision excluded some evidence outright but granted the Government's motion to admit some of the uncharged acts as evidence that completes the story, establishes relationships of trust, and/or corroborates testimony of cooperating witnesses.

Both defendants acknowledged the existence of the Bonanno OCF and their own membership in it in front of the jury on February 27, 2006 during their opening statements. Basciano's attorney, Barry Levin ("Levin"), stated "I'm not here to dispute, nor is Mr. Basciano here to dispute, whether he is a member of the Bonanno Crime Family. So what. It's not a crime to be a member of the Bonanno Family. It's a crime to commit murder, extortion, arson, loansharking." (Trial Tr. of Feb. 27, 2006, at 2011.) DeFilippo's attorney admitted that "Mr. DeFilippo was a member of the Bonanno family and he was a bookmaker." (Id. at 2062.) Both defendants argued that they were not guilty of the charged racketeering acts and substantive counts in the indictment. (Id. at 2011, 2063).

2

In response to the Defendants' opening arguments, the Government requested that the court reconsider its decision in the Feb. 17, 2006 M&O to exclude all uncharged acts as substantive evidence of enterprise evidence. The Government argued that the opening statements were not sufficient under the rubric contemplated by the Second Circuit in United States v. DiNome, 954 F.2d 839, 844 (2d Cir. 1992):

> Presumably, a RICO defendant could stipulate that the charged RICO enterprise existed and that the predicate acts, if proven, constituted the requisite pattern of racketeering activity. The evidence of crimes by others might then be excluded, and the defense would stand or fall on the proof concerning the predicate acts charged against the particular defendant.

I quoted this dicta in my Feb. 17, 2006 M&O in response to the Government's argument that the stipulation of the existence of the enterprise would not allow the court to exclude all uncharged acts of misconduct as substantive enterprise evidence. (Feb. 27, 2006 M&O, at 3-4.) I did not – and do not – find, however, that this quote presents the specific test appropriate for a situation such as this one. Here, the Defendants are not seeking to exclude the evidence of crimes by other members of the Bonanno OCF, but rather to exclude evidence of their own uncharged crimes. Nonetheless, my analysis of the stipulation requirements for this case leads to an extremely similar test.

In response to the Government's request for reconsideration, I examined the elements of the Racketeering Conspiracy count alleged against both defendants as Count 1 of the fifth Superseding Indictment in this case. The RICO conspiracy statute provides, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Subsection (c), which the defendants are charged with conspiring to violate states, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

3

to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The five elements of this charge, as I explained in court on March 1, 2006 are:

> (1) That an enterprise, as described in the indictment, existed on or about the time alleged in the indictment. Specifically, this formal or informal association must have an ongoing organization with some sort of framework for making or carrying out decisions and the various members and associates of the association must function as a continuing unit to achieve a common purpose.
>
> (2) The enterprise engaged in, or its activities affected, interstate or foreign commerce. This requires a finding that either the enterprise as a whole had a minimal effect on interstate or foreign commerce, or the enterprise itself directly engaged in the production, distribution or acquisition of goods or services in interstate commerce.
>
> (3) The defendant was employed by or was associated with the enterprise. This element requires that either the defendant was on the payroll and performed services, held a position, had an ownership interest in, or joined the enterprise as a partner or member.
>
> (4) The defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise. The defendant intentionally performed acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise.
>
> (5) The defendant knowingly agreed that either he or other employees or associates of the enterprise would conduct or participate in the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, through the commission of at least two of the charged racketeering acts within ten years of each other, or through causing or aiding and abetting the commission of two such racketeering acts.

See, e.g., Eleventh Circuit Pattern Jury Instructions § 71.1 (2003); Seventh Circuit Pattern Jury Instructions (1999 Ed.); Sedima, S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496-97 (1985); United States v. Posado-Rios, 158 F.3d 832, 855 (5th Cir. 1998); United States v. Hoyle, 122 F.3d 48, 50 (D.C. Cir. 1997); United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995); United States

4

v. Console, 13 F.3d 641, 652-53 (3d Cir. 1993); United States v. Alvarez, 860 F.2d 801, 818 (7th Cir. 1988).

In order to take an issue out of the trial, "a defendant must make a statement to the court of sufficient clarity to indicate that the issue will not be disputed." United States v. Colon, 880 F.2d 650, 659 (2d Cir. 1989). Such concession must be "unequivocal." United States v. Mohel, 604 F.2d 748, 754 (2d Cir. 1979.) However, once such a stipulation is made, "the other-crime evidence should be excluded." Id.

By studying the transcript of the opening statements, I found that Defendants had clearly and unequivocally conceded the third element involving membership. (Trial Tr. of Feb. 27, 2006, at 2011, 2062.) The transcript also demonstrates the Defendants' intention to focus the trial on the specific racketeering acts charged and not the Bonanno crime family's existence, consistent with the proffers made in pre-trial briefing. The concessions were less explicit as to the other elements, however, and insufficient under the requirements of Colon and Mohel. I asked the defendants to unequivocally stipulate to the first and fourth elements in court. In a lengthy dialogue to ensure a transparent and clear agreement, the Defendants conceded the first through fourth elements of Count 1. The transcript reads:[1]

> Court: So with respect to element one, I am going to ask the specific question: Do the defendants stipulate that an Enterprise, the Bonanno organized crime family, as described in the indictment, existed on or about the time alleged in the indictment?
>
> Mr. Levin: On behalf of Mr. Basciano the answer unequivocally is yes.
>
> Mr. Levitt: I conceded there was a Bonanno family in my opening statement . . .

---

[1] Basciano was represented by attorney Barry Levin. DeFilippo was represented by attorney Richard Levitt.

Court: The question is, is there an agreement that the defendants stipulate to the existence of this ongoing organization with a framework carrying out its decisions and that various members and associates of the organization function as continuing units to achieve some common illegal purpose. . . . Not that a specific crime was committed. . . .

Mr. Levin: . . . the shorthand answer is, yes, we are not contesting that particular issue. . . .

Mr. Levitt: [DeFilippo] accept[s] that as the Court frames it. We said it in our opening statement, we will repeat it in our summation.

Court: I was just attempting to make this crystal clear because when I go to charge the jury I don't want there to be any question when I say, you know, you don't have to find that, you know, elements one, two, three and four. . . .

Court: Element four is that the defendant knowingly conducted or participated either directly or indirectly in the conduct of the affairs of the Enterprise. . . . And specifically, that the defendant intentionally performed acts, functions and duties, which are necessary or helpful in the operation of the Enterprise.

Mr. Levitt: We will certainly acknowledge that we said [DeFilippo] was a bookie for [the] Massino organization Massino family, Bonanno family.

Court: So you stipulated to element four. You didn't have to stipulate to the specific acts that are alleged as predicate acts Count One, but you do have to stipulate that we are taking it out of the discussion, or out of the trial to be proved that the specific defendant intentionally performed such acts, functions and duties which are necessary to or helpful in the operations of the Enterprise. That's been stipulated to . . . right?

Mr. Levitt: That has been stipulated to in element one.

Court: That there is an Enterprise Bonanno OCF as described in the indictment?

Mr. Levitt: I stipulated that there's a Bonanno organized crime family and I stipulated that [DeFilippo] did acts in furtherance of the affairs of that crime family.

Court: Intentionally?

Mr. Levitt: Well, sure. He was a bookie for years. For years and years and years.

Court: Mr. Levin.

> Mr. Levin: There is not a [problem] – stipulating to the fact that my client participated in the Enterprise and did certain acts. The problem is if the Court pushes us to a particular act, then there is a conversion on that particular predicate and I want to make sure.
>
> Court: I am not asking you to admit to any of the predicate acts I am just. . . . The Court isn't requesting that you stipulate to any particular predicate act or other act, but it is necessary if the fourth element is that the defendant knowingly participated directly or indirectly in the conduct of the affairs of the Enterprise, if we are going to take that out of the case or out of the trial there has to be a concession that he did so.
>
> Mr. Levin: The answer, yes, by the mere fact that my client attended meetings, so we do not dispute that. So the answer is yes.
>
> Court: So I have a yes on both.
>
> Mr. Andres: I wonder, for the purposes of interstate commerce, the existence of an Enterprise, the Enterprise, they are admitting the existence of operating in interstate commerce.
>
> Court: Is there any dispute?
>
> Mr. Levitt: There is no dispute and we are not going to ask that the Court instruct the jury with regard to any interstate element.
>
> Mr. Levin: I join in that. …
>
> Court: So you've stipulated on the first four elements and the fifth element is the subject matter of the litigation in the trial.

(Trial Tr. of Mar. 1, 2006, at 2455-62.)

ANALYSIS

Although the Government is not contesting that the court used the correct elements in questioning the defendants as to their stipulations, the Government argues that the defendants' actual concessions are legally insufficient as to element four. The Government bases this

7

objection on the language used by Basciano's attorney in his opening statement and in his stipulation to the court.[2] (Gov't Ltr. of Mar. 2, 2006, at 2-5.)

As my Feb. 17, 2006 M&O explained, a defendant may stipulate to one or more of the elements of a RICO charge in order to avoid the Government's introduction of uncharged acts of misconduct for the purpose of substantive enterprise evidence. I find in this case that the defendants are required to stipulate to elements one, three, and four of the RICO Conspiracy charge in order to take the issue of the enterprise's existence out of the trial for the purpose of uncharged misconduct evidence.[3] Uncharged acts of misconduct within the enterprise would be probative of any of those three elements. The probative value, however, is non-existent, or at best minimal, where the Government has no burden to prove the elements. Under the Second Circuit precedent in Mohel, "the government is not barred from proving each and every element of the offense; it is merely restricted, when the defendant is willing to concede an element of the offense, from proving that element in a highly prejudicial manner." United States v. Torres, 610 F. Supp.1089, 1093 (E.D.N.Y. 1985) (Maletz, J.) The court, in Torres, explained that "[t]he jury will still be aware of each element of the offense[] and, indeed, the government will have airtight proof on the element to which the defendant stipulates . . ." Id. Because the probative value of the evidence is extremely weak, the danger of unfair prejudice substantially outweighs that value and the evidence must be excluded under Rule 403.

---

[2]Although the Government makes its requests as to both defendants, it is noted by the court that the Government's letter makes all of its specific objections as to Basciano, and his counsel Barry Levin.

[3]I did not require a stipulation to the second element (interstate commerce) in order to exclude uncharged conduct as enterprise evidence. The Defendants, however, clearly conceded that element. (Trial Tr. of Mar. 1, 2006, at 2461-62.)

For this ruling, the issue is not whether the Defendants clearly and unequivocally stipulated to certain elements. Rather the court must now decide whether other comments to the jury and court by defense counsel negated or diminished the Defendants' otherwise clear stipulations.

Specific stipulations are generally not required to be made in front of the jury, although the jury will be instructed that the element has been stipulated to. See, e.g., Torres, 610 F. Supp. at 1093, n.8 ("the court intends to instruct the jury that *a* felony conviction is an element of the offense and that defendant has stipulated to that element, without indicating that defendant has two prior felony convictions") (emphasis in original); Mohel, 604 F.2d at 754 ("[t]he trial judge may then instruct the jury that such a concession has been made and that if the jury finds beyond a reasonable doubt that all the other elements of the offense have been established a verdict of guilty may be returned") .

Furthermore, an agreement by the Government is not required. Mohel, 604 F.2d at 754 ("we cannot agree that the Government, by evading an unequivocal offer to stipulate, may create an issue as to intent and knowledge for the purpose of admitting the objected-to evidence.") In Mohel, the Second Circuit noted that any "fear that [the prosecution] might be 'whipsawed' by such a concession into not presenting evidence with respect to an element of the offense, only to have a conviction reversed or an acquittal returned due to lack of proof of the element conceded, is unfounded." Id.

Nevertheless, the defendants are required to "act[] accordingly" after conceding an element of the charged crime. Mohel, 604 F.2d at 754. If defendants raise a question as to the element, the Government may be allowed to introduce evidence of other acts of misconduct to

prove that element (see, e.g., United States v. Ortiz, 857 F.2d 900, 905 (2d Cir. 1988), subject to a Rule 403 balancing test.

Here, the Government specifically objects to the language that Levin used during his stipulation. In response to a direct question about his client's stipulation to the fourth element, Levin responded, "[t]he answer, yes, by the mere fact that my client attended meetings, so we do not dispute that. So the answer is yes." (Trial Tr. at 2459.) I do not find that Levin's citation of a specific example of Basciano's participation was intended to narrow his stipulation to the fourth element when he so clearly affirmed the court's language that "the defendant knowingly participated directly or indirectly in the conduct of the affairs of the enterprise." (Id.) Instead, Levin's discourse appears to be merely one specific example added to the affirmation. Because I clearly stated that the defendants were not required to stipulate to any predicate acts (id.), I find that Levin's choice to express his client's stipulation with reference to certain acts of Basciano's does not invalidate or otherwise alter the defendant's clear stipulation to element four.

The Government next argues that Levin's arguments in his opening statement were contrary to his later stipulation. (Gov't Ltr. of Mar. 2, 2006, at 3-4.) Specifically, the Government is concerned about Levin's suppositions that Basciano's participation in organized crime activities were compelled by fear. For example, Levin stated that: "[y]ou'll find out – Cantarella is going to tell you – I'm going to tell you now – Vinny provided money to Cantarella for Massino for a few years. Why did Vincent Basciano provide money for Joe Massino? He wanted to stay alive." (Id. at 3) (citing Trial Tr. of Feb. 27, 2006, at 2020-23).

I find that several statements by Basciano's counsel during the opening statement suggested to the jury that at least some of Basciano's involvement in the Bonanno organized crime family – outside the predicate acts – was less than intentional. For the purpose of

10

upholding the ruling on enterprise evidence that I made in the Feb. 17, 2006 M&O, it is not necessary for Basciano to stipulate that every act he participated in for the Bonanno OCF was done knowingly and intentionally. Nonetheless, an unequivocal stipulation as to element four, that the defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise and that the defendant intentionally performed acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise is required. I hold that both Levitt and Levin did so stipulate on behalf of their clients in front of the court on March 1, 2006. It was not obligatory that Levin's opening statement suggest that Basciano knowingly and intentionally engaged in the operation of the enterprise. (See, supra, at 9.) However, in the future, he must not contradict his concession, or it will no longer have effect in this trial. Mohel, 604 F.2d at 754.

At this point, I reserve on the question of whether (and if so, when) a jury instruction will be necessary to address the possibility that certain statements made in Basciano's opening statement are misleading to the jury, given the defendant's concession. Should Basciano continue to assert that his participation in the OCF outside of the predicate acts (thereby implicating element four) was motivated by fear and was somehow unwilling or unknowing, the court will likely allow the Government to introduce other acts of misconduct as enterprise evidence. At this time, however, I uphold my earlier ruling that no uncharged acts of misconduct may be introduced as enterprise evidence.

**CONCLUSION**

For the reasons stated above, the Government's request is denied.


SO ORDERED.

Dated: March 8, 2006  
Brooklyn, N.Y.

_____/s/_____  
Nicholas G. Garaufis  
United States District Judge