UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                          MEMORANDUM & ORDER

     v.                                            03-CR-929 (NGG)

PATRICK DEFILIPPO,

              Defendant.
------------------------------------------------------X
GARAUFIS, United States District Judge.

On April 10, 2006, the United States ("Government") notified defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo"), pursuant to Brady v. Maryland, 373 U.S. 83 (1963), that the Government had just located an F.B.I. 302[1] from 1999 suggesting that DeFilippo was not involved in the 1999 murder of Gerlando Sciascia ("Sciascia") for which he is currently being tried. (Gov't Ltr. of Apr. 10, 2006.) The F.B.I. 302 stated that a confidential informant had told the F.B.I. in 1999 that co-defendant Basciano, who is not charged in the Sciascia murder, was in fact responsible. (Id.) On April 11, 2006, upon receiving the Government's Brady disclosure, DeFilippo renewed his motion for severance. (Trial Transcript ("Trial Tr.") at 7758; see also Memorandum & Order of December 23, 2005 ("Severance

---

[1] "302" is the form used by F.B.I. agents to summarize an interview. In this case, the 302 recorded information provided by a confidential informant on April 5, 1999. The 302 read:
      Source, who is not in a position to testify, provided the following information:
      VINNY BASCIANO killed GERALD SCIASCIA without sanction. The "hit" started at
            BASCIANO's pizzeria on Tremont Avenue in the Bronx.
      BALDO AMATO helped BASCIANO move and dump the body.
      BASCIANO is the acting skipper for PAT DEFILIPPO. DEFILIPPO is not doing well.

1

M&O").)[2]

The court takes this situation very seriously. I am extremely discomfitted by the Government's disclosure of Brady materials in the seventh week of this trial and only a few business days before the Government plans to rest its case. In response to this disclosure, on April 12, 2006, the court ordered the Government to further investigate the confidential informant ("Confidential Informant" or "CI") who supplied the information in the 302 to the F.B.I. (Trial Tr. at 7763-64.) At DeFilippo's request, I interviewed Confidential Informant on April 13, 2006, using many of the questions suggested by DeFilippo's attorney (DeFilippo Ltr. of Apr. 12, 2006), as well as my own. Based on the information obtained at that interview, and in accordance with the relevant law, I find that a severance is not warranted at this time. This M&O assumes familiarity with the facts and prior decisions in this case.

**ANALYSIS**

Severance is justified "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt." Zafiro v. United States, 506 U.S. 534, 539 (1993). The "denial of a severance motion should be reversed only when a defendant can show prejudice so severe as to amount to a denial of a constitutionally fair trial, or so severe that his conviction constituted a miscarriage of justice." United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002) (internal citations and quotations omitted). Here I consider whether any of DeFilippo's specific trial rights have been compromised.

---

[2] The court notes that this issue was not actually briefed by any of the parties in relation to this particular disclosure. Nonetheless, there have been extensive briefings on severance by the parties in pre-trial motions and this court is very familiar with the law in reference to severance.

I.  **<u>Antagonistic Defenses</u>**

DeFilippo's trial attorney has previously stated to the court that he has chosen, as a strategic matter, not to mount an antagonistic defense despite his contention that such a defense would be in his client's best interest in a severed trial. (Trial Tr. at 3724, 7758.) Notwithstanding the decision of DeFilippo's counsel, I now consider whether severance would be warranted were DeFilippo to engage in an antagonistic defense at this point in the trial, based on the new information presented by Confidential Informant's 302. In doing so, I also reconsider my severance decision of December 2005 in light of the new evidence.

Severance based on antagonistic defenses can be based on a theory of mutually antagonistic defense or a theory of antagonism reaching the essence of the defenses. "It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." <u>Zafiro</u>, 506 U.S. at 540. "[D]efenses must conflict to the point of being so irreconcilable as to be mutually exclusive before we will find such prejudice as denies defendants a fair trial." <u>United States v. Cardacia</u>, 951 F.2d 474, 484 (2d Cir. 1991.) "Defenses are mutually exclusive or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." <u>Id</u>. This is not such a case, as Basciano is not charged with the Sciascia murder. Hence, there are no grounds to sever based on mutually antagonistic defenses, as mere finger pointing is not sufficient for severance. <u>United States v. Haynes</u>, 16 F.3d 29, 31-32 (2d Cir. 1994)

Antagonistic defenses can also merit severance where "antagonism at the *essence* of the defenses prevails to such a degree – even without being mutually exclusive – that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty." <u>Cardacia</u>,

3

951 F.2d at 484 (emphasis in original). The court thus considers whether DeFilippo's Sixth Amendment right to present a defense is compromised by a joint trial, given new evidence suggesting Basciano's involvement in the murder. I do not find the antagonism to reach this level. Certainly, at this point in the trial, the "essence" of the defense could not be implicated where there has been no development of antagonistic defense theories during for the first two months of trial. Moreover, I do not find that there is anything in the new evidence contained in the 302 that changes the reasoning of my 2005 Severance M&O that this evidence does not lead to a defense the "essence" of which would require severance.

## II. Brady

I now consider the possibility that DeFilippo's right to present a defense and his due process rights were compromised by the Government's untimely disclosure of Confidential Informant's 302. This claim requires an analysis under Brady. "There are three components of a true Brady violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also, e.g., Banks v. Dretke, 540 U.S. 668, 691 (2004); United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004).

On January 3, 2006, the court issued a lengthy M&O dealing with a number of discovery and pre-trial issues, including the Government's Brady obligations. At the time, I denied the Defendants' motion to order production of Brady materials, based on the Government's representations that it was aware of its obligations and was fulfilling them. I wrote:

> With less than a month until trial the Government should share any remaining

> Brady information of which it is aware. The time is rapidly drawing short for the defense to prepare its case using such material. The court assumes that the Government is disclosing information in compliance with its obligations under Brady and its representations to the court, and does not believe an order is necessary for further compliance. Nonetheless, I use this opportunity to remind the Government that any failure to meet its obligations will have serious consequences.

(M&O of Jan. 3, 2006, at 16.)

The information in CI's 302 appears to be clearly exculpatory and favorable to DeFilippo. (Trial Tr. at 7760.) Although there is no bad faith on the part of the Government alleged in this matter, the exculpatory information provided by Confidential Informant has been in the F.B.I.'s possession since 1999. The Government was furthermore on notice of its obligations to immediately turn over any remaining Brady material as of January 3, 2006.[3] The Government's duty is this area is inflexible, and irrespective of good faith.

> [T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

Kyles v. Whitley, 514 U.S. 419, 437-38 (1995) (internal citation omitted); see also United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995). Accordingly I find that the Government's

---

[3] Although later withdrawn without a reconsideration of the findings, the court also issued an order on March 30, 2006 requiring the Government to "turn over all Brady material *in its possession* no later than Friday, March 31, 2006." (M&O of Mar. 30, 2006 at 6 (emphasis added).) The Government requested a time extension until April 3, 2006, which was granted (Trial Tr. at 6531) and a further time extension until April 4, 2006 that was granted in order to conduct a full search of its documents. (Trial Tr. at 6697-98.) The Government disputed the findings in the M&O of March 30, 2006 and filed a motion to reconsider. (Gov't Mot. Reconsid. Mar. 30, 2006 M&O of Apr 3, 2006.) Without reconsidering the findings of the March 30, 2006 M&O, I withdrew that decision, noting that the Government had raised new facts that may have been relevant for some of the findings in the M&O. (M&O of April 8, 2006.)

unexplained failure in turning this material over until almost midnight on April 10, 2006 constitutes suppression of Brady material, although the court finds no evidence of bad faith on the part of the Government.

The third prong of the Brady test looks at whether the Government's delay in producing material pursuant to its Brady obligations prejudiced Basciano in violation of his due process rights. This question depends on whether the information was discovered in enough time for its effective use at trial. United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001); Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001). The facts of this case raise two questions for the court under the prong of prejudice: (1) at this point, does the defense need any particular accommodation in order to make effective use of the information going forward, and (2) has DeFilippo's *entire* defense been compromised by not having this information earlier to an extent that he should be granted a new trial. I consider each of these questions in turn.

### A. Prejudice going forward

Prejudice occurs when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. at 682. "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001).

To assist DeFilippo in making effective use of the newly disclosed evidence at trial, the court required the Government to investigate the availability of Confidential Informant, and to

6

produce the CI in court for an in camera, sealed interview.[4]

At an interview of CI held on April 12, 2006, the court learned relevant facts that assist in this analysis. Perhaps most importantly, CI stated unequivocally that he would not consent to an interview with any defense attorney under any circumstances.[5] (Sealed Transcript at 10.) This signifies that DeFilippo will not be assisted by a delay in the trial, as he would not gain additional information from speaking with CI.

The interview revealed no evidence that CI was a co-conspirator. (Id. at 2.) The CI stated that he had no first hand knowledge of the facts described in the 302. (Id. at 4-5.) I note that CI did not have any current recollection of the specific content of the 302 or of the conversation or conversations that would have lead to this disclosure to the F.B.I., including the identities of any of participants, the number of participants involved, the circumstances of the discussion, or even the Borough in which the conversation had taken place. (Id. at 4-8.) CI only recalled that he learned the information somewhere in New York City. (Id.)

Hence I conclude that DeFilippo will not suffer prejudice going forward if the trial remains on schedule.[6] I therefore will not delay trial or grant severance on this basis.

**B.      Irreparable Prejudice**

The court also considers whether DeFilippo suffered prejudice because he did not have

---

[4]During the interview and in response to the court's questions, CI revealed information that could potentially compromise his identity and therefore his security. The court, therefore, has sealed the interview transcript. I convey all relevant information to the parties in this M&O.

[5]The court offered to appoint counsel for the CI to discuss the issue further, but the CI declined. (Sealed Transcript at 9-10.)

[6]Should DeFilippo have a good faith basis for needing an adjournment of trial or other specific corrective measure by the court, he should raise it as soon as possible.

the opportunity to craft his defense around this evidence. There have already been seven weeks of trial, and DeFilippo only learned of this evidence earlier this week. In the last seven weeks there has been significant testimony relating to the Sciascia murder and DeFilippo's lawyer has conducted hours of extensive cross-examination of Government witnesses, all without possessing this information.

Given the limits of the evidence explained above, it is difficult to imagine how earlier possession of the 302 would have changed DeFilippo's strategy so completely as to constitute prejudice under Brady, or a violation of DeFilippo's right to present a defense under the Sixth Amendment. DeFilippo has not shared with the court any specific ways that he would have used this information, making it more difficult to envision the evidence's potential use.

The court finds that the Government's delay in turning over the Brady material, although improper, has not led to a violation of DeFilippo's due process rights under Brady or his Sixth Amendment right to present a defense.

At this point, I trust the Government is fully aware of its Brady obligations and of the serious implications of any failure to fulfill those obligations. Because this issue is of such importance to the fairness and integrity of this trial, I once again remind and order the Government to comply with its full disclosure obligations under Brady.

**CONCLUSION**

Finding that DeFilippo's specific trial rights under the constitution have not been violated either by a joint trial or by the Government's suppression of <u>Brady</u> material, the court DENIES DeFilippo's renewed motion for severance.


SO ORDERED.

Dated: April 14, 2006  
Brooklyn, N.Y.

\_\_/s/_____  
Nicholas G. Garaufis  
United States District Judge