UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

MEMORANDUM & ORDER

v.

03-CR-929 (NGG)

VINCENT BASCIANO and
PATRICK DEFILIPPO,

Defendants.
-------------------------------------------------------X
GARAUFIS, United States District Judge.

This Memorandum and Order (M&O) addresses a number of recent requests and motions raised by the United States ("Government") and defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo") (together "Defendants"). Familiarity with the facts of this case and all prior rulings is assumed.

## I. Admissibility of David Nunez's 1985 Lineup Identification of Basciano

### A. Factual Background:

The Government has charged that on or around November 14, 1985, Basciano attempted to murder David Nunez. On November 15, 1985, at approximately 6:15 p.m., Basciano was placed in a lineup and was identified by Nunez. (Basciano Nunez Ltr., dated Apr. 13, 2006, at 1; see also 1987 Wade Tr. at 33 (testimony of Police Officer Keith Garley).) Nunez has since given contradictory accounts of his recollection of his assailant, including (1) in December 1985, when he spoke with Basciano's then-attorneys Elias Martinez and Gary Friedman, and stated that all he remembered was a "man with a moustache" (M&O, dated Jan. 27, 2006, at 6); (2) in May 1986 he informed FBI Special Agents Howard Mette and Randolph Biddle that he made a mistake about the line-up because the person he identified (Basciano) did not have a moustache,

and the person who shot him did (id.); and (3) he recently reportedly spoke with an investigator working for Basciano, and said that detectives came to his home on November 14, 1985 and showed him photographs of Basciano, which assisted him in identifying Basciano at the line-up. (Id. at 6-7.) In the M&O, dated January 27, 2006, in which this court denied Basciano's motion to exclude Nunez's identification of Basciano in the line up, this court rejected Nunez's last account, finding that this account is impossible to reconcile with the fact that hospital records show that he could not have gone home after being discharged and before the line up. (Id.)

Basciano now moves in limine to exclude the testimony of Officer Keith Garley on Nunez's identification of Basicano in the 1985 line-up as a violation of Basciano's Sixth Amendment Confrontation Clause rights as articulated in Crawford v. Washington, 541 U.S. 36 (2004).

B. Discussion

The Confrontation Clause of the Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Supreme Court in Crawford v. Washington, 541 U.S. 36 (2005) "announced a *per se* bar on the admission of a class of out-of-court statements, denominated 'testimonial,' against an accused who had no prior opportunity to cross-examine the declarant." United States v. Stewart, 433 F.3d 273, 290 (2d Cir. 2006).

First, it is clear that the testimony sought, i.e. a police officer's account of Nunez's identification of Basciano in the line-up, is testimonial. "The types of statements cited by the Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial

proceedings." United States v. Stewart, 433 F.3d 273, 290 (quoting United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004)). Generally, statements made to a law enforcement agent that were not subject to cross-examination are testimonial where, as here, they are offered for their truth. Id.

The Government in opposing this motion explains that it is entitled to admit Officer Garley's testimony on the ground that Basciano forfeited his Confrontation Clause rights by tampering with Nunez after the line-up. The Supreme Court in Crawford made clear that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." Crawford, 124 S. Ct. at 1368. The 'rule of forfeiture' has been articulated by the Supreme Court as follows:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witness against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

Reynolds v. United States, 98 U.S. 145, 158 (1879). "Where a defendant has procured the declarant's unavailability 'by chicanery, . . . by threats, . . . or by actual violence or murder," the defendant is deemed to have 'waived his sixth amendment rights and, a fortiori, his hearsay objection' to the admission of the declarant's statements.'" United States v. Williams, 2006 U.S. App. LEXIS 8188, at *26-*27 (2d Cir. Mar. 22, 2006) (quoting United States v. Mastrangelo, 693 F.2d 269, 272-73 (2d Cir. 1982), cert. denied, 467 U.S. 1204 (1984)). This rule was codified in Fed. R. Evid. 804(b)(6), which provides that evidence of an out-of-court statement by an unavailable declarant is "not excluded by the hearsay rule" when "offered against a party that

has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). "[A]n evidentiary hearing in the absence of the jury is necessary before a finding of a waiver may be made." Mastrangelo, 693 F.2d at 273. The Government has the burden to show a waiver by the preponderance of the evidence. Id.

The Government must therefore show (1) that Basciano tampered with Nunez, and that (2) as a result, Nunez is unavailable. On the first prong, the Government in opposition to Basciano's motion presents to this court evidence in the form of testimony by Tommy Lee, Anthony Bottone, and proffers that it would seek to admit other testimony showing that Basciano intimidated Nunez into denying his original identification of Basicano as the attempted murderer. (See Gov't Nunez Ltr., dated Apr. 14, 2006, at 3-6.) Although there are few post-Crawford cases analyzing the sufficiency of evidence necessary to find that defendant forfeited his Confrontation Clause rights, it is fair to conclude from this evidence that the Government has met its burden to show by a preponderance of the evidence that Basciano threatened Nunez in order to prevent him from testifying truthfully. See Francis v. Duncan, No. 03-Civ.-4959, 2004 U.S. Dist. LEXIS 16670, at *52-53 (S.D.N.Y. Aug. 23, 2004) (District court sitting in habeas review of New York state conviction held that Government's obligation to show causal link between misconduct and witness's refusal to testify can be met by circumstantial evidence, and judges may use common sense in drawing inference to determine the reasons for the witness's unavailability.); State v. Hand, 107 Ohio St. 3d 378, 390 (S. Ct. Oh. Jan. 18, 2006) (considering applicability of analogous Ohio waiver rule, judge found that government's production of witnesses who testified that defendant killed declarant in order to eliminate him as possible witness met prosecution's burden).

However, to properly invoke the forfeiture rule exception to Basciano's Confrontation Clause rights, the Government must show that Nunez is *unavailable* as a result of Basciano's tampering, the second prong of the forfeiture rule. The Government has not yet offered any evidence that Nunez, if called to testify, would not do so. Clearly, if the Government were to call Nunez to the stand, and he refused to testify, e.g. because of fear of retribution, that would satisfy the Government's burden to show that Nunez is unavailable. Similarly, this court could make a determination after an *in camera* interview of Nunez that he is unavailable.

However, until the Government makes the requisite showing that Nunez is unavailable, it has not met its burden under the second prong of the forfeiture rule test and, hence, Officer Garley's testimony would violate Basciano's Confrontation Clause rights under Crawford. I hereby reserve judgment on Basciano's motion, subject to any evidence of unavailability presented by the Government on Monday, April 17, 2006.

## II. Admissibility of evidence of Massino's cooperation

On April 10, 2006, DeFilippo submitted a letter of the defense's intention to introduce evidence of Joseph Massino's ("Massino's") cooperation agreement with the government. (DeFilippo Ltr. of Apr. 10, 2006 ("Defense Ltr. on Massino") at 1.) The defense also seeks to admit the fact that the Government has debriefed Massino on several occasions and the fact that defense requests to interview Massino have been refused. (Id.) Finally, the defense requests a missing witness charge for Massino. (Id.) The defense argues that Massino has given contradictory statements in the past by writing on his 3500 material that the Government's allegations were false and later substantiating those allegations in Massino's own 302s. (See id. at 4 n.2.) The defense argues that it should be allowed to present evidence that would allow the

jury to infer that the Government did not call Massino, despite its ability to do so, because Massino would have hurt the Government's case. (Id. at 1.)

The Government responded to this request with a brief submitted on April 14, 2006. (Gov't Opp. Mot Admit Evid. of Apr. 14, 2006 ("Gov't Massino Opp.").) The Government argues that the evidence the defense seeks to admit is irrelevant, and therefore foreclosed by Federal Rules of Evidence ("Rules") 401, 402. (Id.) Any relevance would be far outweighed by the unfair prejudice suffered by the government through confusion and misleading of the jury. (Id.) The Government further argues that a missing witness charge is inappropriate because Massino is not "unavailable" to the defense. I consider the questions of admissibility in the present M&O and reserve on the question of the jury charge.

"All relevant evidence is admissible, except as otherwise provided . . . Evidence which is not relevant is not admissible." Rule 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. This is a very expansive definition. "Evidence need not be conclusive in order to be relevant." Contemporary Mission v. Famous Music Corp., 557 F.2d 918, 927 (2d Cir.1977). "Nonconclusive evidence should still be admitted if it makes a proposition more probable than not; factors which make evidence less than conclusive affect only weight, not admissibility." United States v. Schultz, 333 F.3d 393, 416 (2d Cir. 2003) (internal citation and quotation omitted).

The Government argues that the cooperation agreement is not admissible because Second Circuit precedent does not allow the *prosecution* to introduce a cooperation agreement until a cooperating witness has been attacked by the defense. (Gov't Massino Opp. at 16.)

Nonetheless, the measure for here is whether it would be relevant to the *defense's* case, not the Government's. The Government goes on to state that because the cooperation agreement does not prove guilt or innocence, it is not relevant. (Id. at 17-19.) Rule 401's definition of relevance is not so restricted. Although Massino's cooperation agreement has low relevance, I find that it is nonetheless relevant under Rules 401 and 402.

The Government argues that Massino's cooperation agreement is more confusing and misleading than probative under Rule 403. Joseph Massino has certainly not been absent from this trial. Both defense attorneys spoke of Massino in their opening statements, witnesses have identified and testified about Massino (on both direct and cross-examination), the organized crime family alleged in the indictment has been referred to both as the "Bonanno" family and the "Massino" family, and statements from the 2004 Massino trial have been read into evidence as past inconsistent statements. It is unclear how the fact that Massino cooperated with the Government would be at all confusing or misleading to the jury. Furthermore, the Second Circuit has generally ruled that cooperation agreements prejudice the Defendant's case (see, e.g., United States v. Consentino, 844 F.2d 30, 33 (2d Cir. 1988)), suggesting there is little chance the introduction of Massino's agreement would unfairly prejudice the Government. I find that the proffered testimony poses no realistic threat of confusing the issues before the jury, let alone one which presented a danger of "substantially outweigh[ing]" the evidence's probative value. Rule 403.

There is no dispute as to the fact that Massino cooperated, or as to the authenticity of the cooperation agreement. Massino signed the cooperation agreement before this court. I find that the agreement is admissible.

The Defendants also seek to introduce evidence of Massino's discussions with the Government and DeFilippo's futile efforts to interview Joseph Massino. It is not explained by the Defendants, nor is it clear to the court, what the relevance of such evidence is, what form it would take, or how it could be introduced without calling Massino as a witness. Short of this evidence being offered in admissible form, it will not be considered.

## III. Admissibility of Joseph Filippone's Grand Jury Testimony

On April 13, 2006 Basciano submitted a letter brief in support of a motion filed pursuant to Federal Rule of Evidence ("Rule") 804(b)(1). (Basciano Filippone Ltr. of Apr. 13, 2006 ("Basciano Filippone Ltr.") at 1.) Basciano seeks to introduce the grand jury testimony of Joseph Filippone ("Filippone") from December 29, 2005, when Filippone testified before a grand jury of the Eastern District of New York pursuant to a subpoena.[1] (Id.)

Basciano apparently first sought to have Filippone testify at his trial. In apparent response, Filippone's attorney informed Basciano's counsel, that if called to testify, Filippone intends to

---

1 The relevant portion of the transcript is:

> Q: Do you have any knowledge, indirect or direct, about the circumstances of Frank Santoro's murder?
> A: No, sir.
> Q: Has any other person ever told you about anything involving that murder?
> A. Right, my brother.
> . . .
> Q: Did you ever tell anyone besides the police that Frank was a kidnapper?
> A: No.
> Q: Did you attempt to warn Vincent Basciano that Frank was a kidnapper?
> A: No.
> Q: Did you pass a message to anyone that Frank perhaps was considering kidnapping Vincent Basciano's children?
> A: Not at all.
> Q: Were you ever in the drug business with Frank Santoro?
> A: No.

(Grand Jury Transcript at 60-62; Basciano Filippone Ltr. at 1-2.)

invoke his Fifth Amendment right against incrimination and will refuse to testify.[2] (Basciano Filippone Ltr. at 3; Ex. A.) Basciano has filed this motion seeking to introduce Filippone's grand jury testimony pursuant to Rule 804(b)(1).

Federal Rule of Evidence 804 provides that subject to the unavailability of the declarant, the following is excluded by the hearsay rule: "[t]estimony given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. ("Rule") 804(b)(1). A declarant is unavailable for the purposes of this rule if he or she:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; . . .

Rule 804(a). A declarant becomes unavailable when he or she successfully invokes the Fifth Amendment privilege against self incrimination. United States v. Salerno, 505 U.S. 317, 321 (1992). See also United States v. Matthews, 20 F.3d 538, 545 (2d Cir. 1994); United States v. Bakhtiar, 994 F.2d 970, 977 (2d Cir. 1993). A witness need not be physically brought into court to assert the privilege, although it is preferred that the declarant appear before the court to claim the privilege. See, United States v. Williams, 927 F.2d 95, 98-99 (2d Cir. 1991).

The Supreme Court has noted that "it is the duty of a court to determine the legitimacy of a witness's reliance upon the Fifth Amendment. A witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give." Roberts v. United States, 445

2 Filippone is awaiting trial in the Southern District of New York as a defendant in a multi-defendant heroin trafficking prosecution. He has been held in detention since his January 12, 2006 arrest. (Gov't Ltr. of Apr. 14, 2006 ("Gov't Filippone Ltr.") at 2.)

U.S. 552, 560 n.7 (1980) (citations omitted). Furthermore, "[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination. Rogers v. United States, 340 U.S. 367, 374 (1951); see also United States v. Zappola, 646 F.2d 48, 53 (2d Cir. 1981) ("district court simply accepted [] [declarant's] blanket assertion of the fifth amendment privilege . . . and did not undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions. This was error.").

Even though witnesses are legally bound to give testimony when called by the grand jury, United States v. Calandra, 414 U.S. 338, 343 (1974), the grand jury's authority to compel testimony is conditional on the witness's Fifth Amendment right against self incrimination. United States v. Mandujano, 425 U.S. 564, 575 (1976). If granted immunity to the witness, the witness can be compelled to answer even incriminating questions "on pain of contempt." Id. at 575. Basciano's assertion that Filippone was granted immunity is not supported by any evidence. (See Basciano Filippone Ltr. at 3). The grand jury record makes no mention of immunity and the Government proffers that Filippone was not granted such. (See Gov't Filippone Ltr. at 1.) Furthermore, it is clear from the grand jury record that Filippone knowingly waived his Fifth Amendment privilege against self-incrimination about certain matters when he voluntarily

testified before the grand jury.[3] Under the facts presented, I find that Filippone was not granted immunity for his grand jury testimony of December 29, 2005.

A witness's waiver of privilege may be inferred from his or her course of conduct or prior statements concerning the subject matter of the case, without inquiring into whether or not the witness was aware of the privilege and chose to waive it consciously. Klein v. Harris, 667 F.2d 274, 287 (2d Cir.1981). The privilege against self-incrimination is waived if it is not invoked. Rogers v. United States, 340 U.S. 367, 371 (1951) (citations omitted). Furthermore, "[a] witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same

---

3 The relevant testimony is:

Q: You are being called as a witness, and like all witnesses, you have the right under the Fifth Amendment of the Constitution to refuse to testify about any information that might implicate you in a crime of your own. Do you understand that?
A: Yes.
Q: You also have the right to have an attorney, and if you can't afford an attorney, one could be appointed for you. I note for the record that you have an attorney for you; is that correct?
A: Yes.
Q: What's his name?
A: I don't even know.
Q: Bennet Epstein?
A: Yes.
Q: And have you spoken with him about today?
A: Yes.
Q: Is he here today?
A: No.
Q: But do you want to continue, anyway?
A: Yes.
Q: But should at any point in this that [*sic*] you want to talk to an attorney, we can arrange for you to speak to an attorney, another attorney, and make him available today, or otherwise adjourn the proceeding, and have you come back another time with that Mr. Epstein, if you want to. Do you understand?
A: Right, Yes.

Grand Jury Transcript at 56-57.

subject matter." United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 317 (2d Cir.1979). A waiver is found if the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination. Klein v. Harris, 667 F.2d 274, 287 (2d Cir. 1981). The second prong requires that the prior statement be testimonial and incriminating. Id. at 288.

I find that Filippone cannot find shelter in the Fifth Amendment's privilege against self incrimination and refuse to testify in Basciano's trial. I first find that Filippone knowingly and voluntarily waived his Fifth Amendment privilege when he testified before the grand jury. He was specifically told about his Fifth Amendment privilege against self incrimination. He was also told that he had a right to have his attorney available at the time of the grand jury proceedings, and that the proceedings could be adjourned until he was provided with his own attorney. I next find that his testimony in reference to these matters does not appear to incriminate him and so he would likely be unable to claim a Fifth Amendment right even if he had not waived the right previously.

Filippone is therefore available for the purposes of Rule 804(a), and his grand jury testimony does not fit the hearsay exception provided by Rule 804(b)(1). Filippone cannot use the Fifth Amendment's privilege against self incrimination to avoid testifying at Basciano's trial. Basciano could subpoena Filippone and compel him to testify to those matters which he testified to at the grand jury. However, if Basciano seeks to question Filippone about a matter outside the scope of the grand jury testimony and Filippone refuses to answer on the basis of his Fifth Amendment right against self-incrimination, I will conduct an in camera review to determine

Filippone's availability. Basciano's motion to admit Filippone's grand jury testimony under Rule 804(b)(1) is denied.

**CONCLUSION**

Unless the Government makes the requisite showing that Nunez is unavailable, it has not met its burden under the second prong of the forfeiture rule test and, hence, Officer Garley's testimony would violate Basciano's Confrontation Clause rights under Crawford. I hereby RESERVE judgment on Basciano's motion, subject to any evidence of unavailability presented by the Government on Monday, April 17, 2006.

The Defendants' request to introduce Massino's cooperation agreement into evidence is GRANTED. Defendants' request to introduce evidence of Massino's discussions with the Government and DeFilippo's attempts to interview Joseph Massino is DENIED, unless defendants are able to establish admissibility and relevance of the evidence. Basciano's motion to introduce Joseph Filippone's grand jury testimony is DENIED.

SO ORDERED.

Dated: April 16, 2006
Brooklyn, N.Y.

_______________________
Nicholas G. Garaufis
United States District Judge